JANE J. PECKHAM VS. JOHN H. FAUGHT.

1. The district court has power to make an order which grants to an adverse homestead claimant the right to remain inside a wire fence erected by a person who claims the land by virtue of a settlement made prior to the filing of an entry by such adverse claimant.

2. Where two parties are claiming the right to reside upon a homestead, one by virtue of settlement, the other by reason of a filing in the United States land office, each party has a right to reside upon and occupy the land until the land department has determined to whom the land belongs.

3. In an injunction proceeding the district court may make any order which, in the judgment of such court, may be necessary to give effect to the homestead laws of congress pending the final determination of the contest proceedings in the land department.

*Error from K County.*

*Hill, Fitzpatrick & McGuire,* and *Chas. J. Peckham,* for appellant.

*J. L. Calvert* and *George Gardner,* for appellee.

The statement of facts and opinion was delivered by

DALE, C. J.:  This case comes up from K county, and from the record we find the following facts:

September 16, 1893, Jane J. Peckham, who claims to be qualified to enter lands under the homestead laws of the United States, settled upon and began improving the southeast quarter, section 34, township 28 north, range 1 west, in K county, Oklahoma, and has resided upon and improved the tract of land since said date.

October 7, 1893, John H. Faught made homestead entry for the same tract of land.  Faught claims to have made a settlement upon the land September 16, 1893, but for the purposes of this case it is immaterial whether or not such act of settlement was performed, as he made no permanent improvements upon the land, and did not attempt to do so until March 9, 1894.

On the last named date, the appellant had the land improved with a house and some breaking upon the east eighty, and had a one-wire fence built around the entire tract.  The posts upon which the wire was strung were set at a long distance apart, and the evidence shows that on March 9, 1894, the wire was in some places lying upon the ground, and that it presented no serious impediment to any person who might wish to drive upon the land sought to be enclosed by such fence.

On March 9, 1894, the appellee, being desirous of commencing a residence upon the land, drove upon the same, with material for a house, and began the erection of the same.  Prior to such entry the appellant had protested against his going upon the land or occupying any portion thereof.

March 14, 1894, the appellant, plaintiff below, began proceedings in the district court of K county to recover of defenant damages for injuries sustained by reason of defendant's having destroyed plaintiff's fencing, etc., and on the same day the probate judge of K county, in the absence of the district judge, issued a temporary injunction, restraining defendant in the action from going upon any portion of the land, or breaking any prairie, or erecting any structure thereon.

Afterward the defendant filed in the district court a motion to dissolve the temporary injunction, which was duly heard by the judge of such court, and by order of the court the injunction granted by the probate judge was modified "so as to permit the defendant to remain within the wire fence of plaintiff, without interference with the improvements of plaintiff inside said wire fence."

The court, in finding the facts, as shown by the proof, found "that the entry of said defendant within said wire fence was peaceable and lawful, and not forcible or unlawful."

To reverse the order made by the district court the appellant brings this case here and assigns as error: (1) The district court erred in not overruling defendant's motion to set aside and vacate the temporary injunction allowed in said action, and, (2) the said court erred in modifying the temporary injunction.

The two assignments of error will be considered together.  The question of the power of the courts to deal with the matters involved in this case was quite fully gone into by this court in the case of *Samuel Sproat*

*vs. Otto C. Durland,* published in the Pacific reporter Vol. 35, and the principle therein maintained has been at all times since adhered to by the courts of this territory.   The language used in that opinion upon this question is as follows:

"In fact, it may be stated as a well settled proposition, that the courts have the right to deal with the question of possession as between settlers upon the public domain until such time as the government, by its issuance of patent, puts forever at rest the title to the land."

And further upon the question of the manner in which the courts may act, the opinion continues:

"It is the duty of the courts, in dealing with such matters, to exercise its equitable powers and see to it that possession is given to the person who, under the laws of congress, is entitled thereto."

Assuming, then, that the lower court had the jurisdiction to act and that such power was ample to enable such court to do entire justice in the premises, we will pass to an examination of the question of whether or not the lower court properly construed the laws of congress in holding that the defendant had the right to the use and occupancy of the land, until such time as the land department has decided the relative rights of the parties to the title of such land.

Under the act of May 14, 1880, (U. S. Stat. at Large, vol. 21, p. 141,) congress passed an act for relief of settlers upon public land, the third section of which is as follows:

"That any settler who has settled, or who shall hereafter settle, on any of the public lands of the United States, whether surveyed or unsurveyed, with the intention of claiming the same under the homestead laws, shall be allowed the same time to file his homestead application and perfect his original entry in the United States land office as is now allowed to settlers under the pre-emption laws to put their claims of record, and his right shall relate back to the

date of settlement, the same as if he settled under the pre-emption laws."

This act of congress gave to homestead settlers an additional method of obtaining an inceptive right to land beyond that theretofore had. Prior to the passage of this law, a homestead claimant could obtain an inceptive right only by filing his entry at the land office. Under the pre-emption law, in force May 14, 1880, a settler had ninety days from the date of his settlement within which to file his declaratory statement in the land office, and his rights related back to the date of his settlement. By the passage of the law above set forth, congress extended to a homestead settler the same right to file, within ninety days from settlement, and to have his rights relate back to the date of such settlement.

This law did not repeal the old homestead act under which a person was required to file his entry before obtaining any rights whatever in the land, but gave an additional method of obtaining the inceptive right. These two laws were in force at the opening of the Cherokee Outlet to settlement on September 16, 1893. The appellant settled on and claimed the land under the law of May 14, 1880, and the appellee is basing his right under the prior law of congress found on p. 419, R. S. U. S., beginning with § 2289. Both laws are of equal effect as a basis of claim to a homestead. A party claiming under either has a right of occupancy in the land. From the evidence before us we are of the opinion that neither party was aware that an.adverse right was claimed until after the appellee had filed his entry.

Under the laws of the United States each party is required to reside upon, cultivate and improve the land in order to maintain their rights therein; the one claiming as a settler from the date of such settlement, and the one filing must begin a residence upon and

cultivation of the land within six months from the date of such filing. Keeping in view the law as thus stated, and conceding that the court below had jurisdiction, did such court err in modifying the temporary injunction granted by the probate judge?

The appellant contends that, because she had, under her settlement right, taken possession of the entire tract by enclosing the same with a fence, that therefore she was entitled to the exclusive use and control of the land. The court below, under the evidence, found that the entry of appellee upon the land was made without force, and peaceable, and thereby must have found that the fence of appellant was, in its then condition, no obstruction. But, however that may be, for the purpose of this case, we will assume that appellant did have the entire tract enclosed with a fence.

From the evidence we notice that the appellant, on November 8, 1893, filed her contest against the entry of appellee in the United States land office at Perry, Oklahoma; that she built the fence enclosing the land the latter part of the same month. In other words, after she had notice that there was an entry, by filing, upon the land, she fenced the same. Every act done by her after she ascertained that an adverse entry existed was done with the full knowledge that another party was claiming the land, who, under the law, had as great a right to occupy the land as had she. Such being true she took the risk of the adverse party asserting his rights when she built the fence, and obtained no greater rights by such act than would she had she not erected the fence, and the court should, as it did in this case, disregard the fence in making his order.

But the duty of the court to act rests upon a stronger foundation than that of appellant's special notice of an adverse claim, prior to the time she erec

her fence.   Under the law opening the land to settlement each party seeking a claim is bound to settle or initiate his right. subject to the laws of congress relating to homesteads upon the public domain.

This being true each person claiming an inceptive right by virtue of settlement must know that until the settlement is merged into a filing, the land is subject to an adverse entry, by filing, by any person who may choose to so enter it at the land office.   And if an adverse entry is recorded such entry carries with it an equal right of occupancy of the land until the proper tribunal, the land department, shall have determined which of the two claimants are entitled to the land. And this is also true of the person who relies for his inceptive right upon a filing.   He is bound to know that a settler may be residing upon the tract, and if such be the fact, the settler has the same right to reside upon and occupy the land as has the person filing and not until the settler has the additional rights obtained by a filing can he be said to be entitled to the exclusive possession of the land; and unless a filing has been made for land not settled upon, can it be claimed that an exclusive right to possess runs with the filing.   This must in the very nature of things be true, in order that both laws of Congress may have the proper force and effect.   From these premises it follows that the courts will, in giving proper consideration to the homestead laws of Congress, where they find adverse parties claiming the same land, make an equitable disposition of the possession of the same, and if, upon investigation, it be found that either party has attempted, by building a fence or otherwise, to prevent an adverse claimant who is, under the law, equally entitled to reside upon and occupy the land, from going upon the same, the court should not hesitate to make such order in the premises

as may appear necessary to give effect to the laws of Congress.

Holding to this view we affirm the judgment of the lower court.

Justice Bierer, having presided at the trial ot the cause in the lower court, not sitting; the other Justices concurring.