JOHN W. CLACK v. HENRY C, DIEHL.

1. HOMESTEADS—*Second Entries.* By act of congress of March, 3, 1893, (27 U. S. Statutes-at-Large, 642) provision is made for second homestead entries in the Cherokee Outlet, as provided in § 13, act of March 2, 1889 (25 U. S. Statutes-at-Large, 1005) and it was not error for the trial court to modify an injunctional order theretofore granted thereby permitting contestants to equally occupy a tract of land pending final determination of a land contest in the interior department.

2. SAME—*Occupancy of By Adverse Claimants.* Unless as a matter of law it is clear that one of the parties to a contest has, under the law, no right to enter land as a homestead, and where the contest is based upon a claim of settlement made prior to a homestead entry, it is the duty of the court to provide that both parties may occupy the land pending the final determination of the contest.

*Appeal from the District Court of Garfield County.*

*H. J. Sturgis*, for appellant.

*W. W. Myatt* and *Thomas J. Sanford*, for appellee.

The opinion of the court was delivered by

DALE, C. J.:   April 10, 1894, John W. Clack instituted an action in the district court of Garfield county to enjoin the defendant, Henry C. Diehl, from interfering with him in the quiet possession of the northeast quarter section 20, township 22, north of range 3 west.   He alleged in his petition that he had made settlement thereon September 16, 1893, and homestead entry on October 5, 1893, and that the defendant had not made settlement prior to October 5, 1893, and was disqualified from making entry by reason of having made homestead entry in "old Oklahoma," in April, 1889, which he relinquished in 1891.   The defendant answered, admitting the filing of a homestead entry in 1889, alleged a settlement on

the land in dispute between Clack and himself on September 16, 1893, and further, that on December 13, 1893, he filed his contest against the entry of Clack, alleging his settlement September 16, 1893, and further alleging that while he had theretofore made a homestead entry in "old Oklahoma," that he had relinquished the same and was entitled under the law to make a new entry.   Plaintiff replied, and upon the issues thus joined the cause was tried.   The trial court made findings of fact and conclusions of law and rendered a decree modifying the restraining order theretofore granted upon the *ex parte* application of Clack, and divided the land equally between the two parties to the controversy pending the final settlement of the contest case in the land department.   To reverse this decree Clack brings up the case.

In the findings of fact, as made by the trial judge, it appears that both parties settled upon the land at about the hour of 1 o'clock P. M. September 16, 1893, and that each followed up their respective settlements sufficiently with improvements and residence to entitle them to a standing as claimants by reason of their initiatory acts of settlement, and the only question before us to determine arises out of the fact that Diehl had previously made a homestead entry at Guthrie on April 29, 1889, which was, as he states, afterwards relinquished by reason of the superior right of another.

It is contended by appellant that the fact that Diehl made the prior entry and relinquished the same for a consideration amounting to $300, he is, as a matter of law, disqualified from making a second entry, and that he stands in the attitude of one who can in no event ever obtain any legal rights in the land in dispute, and therefore a court of equity should grant him no relief in a

proceeding of this character.   It may be conceded as a
well settled legal proposition that if it is clear that Diehl
may not under the law ever acquire any right in the land
by reason of being disqualified to enter the same, he can
have no standing in this case, and under such circum-
stances it would have been the duty of the trial court to
have refused to modify the order theretofore made against
him.     On the other hand, unless such fact clearly appears,
it was the duty of the court, under the decisions of this
court, to have rendered the judgment which was given.
(*Peckham v. Fout*, 2 Okla. 173; *Littlefield v. Todd*, 3
Okla. 1; *Mason v. Cromwell*, 3 Okla. 240).

To determine whether or not Diehl has a right upon
the land which may in the land department give him the
status of a contestant, we must look to the law governing
the question of second homestead entries.   By the act of
March 2, 1889, opening "old Oklahoma" to settlement,
we find in § 13 a provision relating to second homestead
entries, which is as follows:

"And provided further, that any person who, having
attempted to, but for any cause failed, to acquire a title
in fee to a homestead under existing laws, or who made
entry under what is known as the commutated pro-
vision of the homestead law, shall be qualified to make a
homestead entry upon said lands."   (25 U. S. Statutes-at-
Large, 1005.)

A like provision was adopted by congress, February
13, 1891 (26 U. S. Statutes-at-Large, 759), and March 3,
1893, (27 U. S. Statutes-at-Large, 563), as regards the
Sac and Fox, Iowa and Kickapoo lands, and upon the
last named date by act of congress the same provision is
incorporated in the act which ratified the agreement with
the Cherokee Indians for the ceding of the Cherokee
Outlet, (27 U. S. Statutes-at-Large, 642), that provision
being:

"The president of the United States is hereby author-
ized at any time within six months after the approval of
this act and acceptance of the same by the Cherokee
natfon, as herein provided, by proclamation, to open to
settlement any or all of the lands not allotted or reserved,
in manner provided in § 13 of the act of congress ap-
proved March 2, 1889." *  *

Afterwards by proclamation of the president, found in
28 U. S. Statutes-at-Large, 1224, it will be seen that the
president in such proclamation specifically provided that
§ 13 of the act of March 2, 1889, *supra*, should govern
the land department in permitting entries in the Cher-
okee Outlet.  This construction of the law seems to have
been adopted by the land department in the case of
*William T. Dick*, 19 L. D. 540.

It would seem from the foregoing that it is quite prob-
able that Diehl will be recognized as having a valid
right as a settler upon lands in the Cherokee Outlet,
he having relinquished his entry in "old Oklahoma" prior
to the passage of the act providing for the opening of
said Outlet to settlement, and we are of the opinion that
the court below not only had the authority, but it was
his duty under the law, while the parties were maintain-
ing their status as contestants, to make such a division
of the land as in his judgment might be found to be
reasonable and proper under all of the circumstances in
the case; and the judgment of the lower court is there-
fore affirmed.

McAtee, J., having presided in the court below not
sitting; Bierer J. dissenting; all the other Justices con-
curring.

Bierer, J.:   I assent to the affirmance of the judgment
of the district court, but do not agree to a determination
of the question as to the homestead qualifications of the

appellee in this case.    I do not think we have jurisdiction of that question in the manner presented.    So long as the title of the land applied for is in the government, the land department has the sole and exclusive jurisdiction of the questions relating to applications to make entry thereof, including the qualifications of the applicant, and so long as the applicant is recognized as a qualified entryman by that department and the land he applied for remains undisposed of, we have no power to hold that he is not qualified, and if we cannot hold him disqualified, equally we cannot hold him qualified.    And so long as appellee has the status of a contestant before the land department, we must accord him the same status before the courts, and if he shall be denied the right to make entry of the land in that contest, that determination must bind us until the title to the land passes from the government, no matter whether we may agree with the department in its construction of the law relating to his qualifications as an entryman or not.    It is therefore useless, as I think it is improper, for us to pass upon this question until its determination is reached before another tribunal.