HON. JNO. L. M'ATEE,  
HON. JOHN C. TARSNEY,  
HON. BAYARD T. HAINER, } ASSOCIATE JUSTICES.  
HON. BENJ. F. BURWELL,

---

### WILLIAM A. PHILLIPS v. HENRY H. KEYSAW *et al.*

(Filed Feb. 11, 1899.)

1. REAL ESTATE—*Title—Growing Crops—Severance.* Growing crops produced by annual labor and cultivation are, for some purposes, a part of the real estate to which they are attached, and until there has been a severance of them from the land, actual or constructive, they follow the title thereto. For other purposes they are regarded as personalty, and do not pass with the land, but go to the planter.

2. CROPS—*Personal Property—Rule.* Crops, after maturity, and severance from the soil, are, for all purposes, personal property. Where there has been a recovery of the possession of the land held adversely, the successful plaintiff is entitled to the growing crops, as against the evicted defendant, who planted them; but, until such adverse possession has been terminated by ouster, the party so adversely holding is the owner, and entitled to the crops produced by his annual labor and cultivation, which were harvested before such ouster.

Opinion of the Court.

3. PUBLIC LAND—*Possession of Claimant—Crops, Ownership of—Injunction.*
Where K. settled upon public land September 16, 1893, established his
residence thereon September 21, 1893, made entry thereof at the
land office September 29, 1893, and remained continuously in the
actual possession of the land from his settlement thereon in 1893,
and where P., on October 13, 1893, instituted contest proceedings
against the entry of K., and the parties were continuously contest-
ing for the right to acquire title to the land in the land department,
until the commencement of the suit, *held,* that the possession of
K. is adverse, although his entry was finally canceled, and the
land department awards the title to P. *Held,* further, that P. cannot
maintain injunction to restrain K. from disposing of wheat sown
and harvested on the land by K. while in such possession thereof,
P. having no ownership or right of property in the wheat to be
protected by injunction.

(Syllabus by the Court.)

*Error from the District Court of Kay County; before
B. T. Hainer, District Judge.*

*Morgan & Pancoast,* for plaintiff in error.

*Dale & Bierer,* for defendant in error.

Action by William A. Phillips against Henry H. Key-
saw and J. B. Manns for mandatory injunction for posses-
sion of land, and prohibitory injunction restraining the
removal of crops therefrom. From an order dissolving
the temporary injunction as to removal of crops, plaintiff
brings error. Affirmed.

Opinion of the court by

TARSNEY, J.: On September 16, 1893, Henry H. Key-
saw. settled upon the southwest quarter of section 14,
township 27 north, range 1 east, I. M., and claimed the
same as a homestead under the homestead laws. On
September 21, 1893, he established his residence upon
said tract of land, and continued to reside upon and cul-
tivate the same until the commecement of this suit. On
September 29, 1893, he filed his homestead entry at the
Perry land office thereon. October 13, 1893, plaintiff in

error, William A. Phillips, contested his entry for prior settlement. Upon hearing, the local land office decided in favor of Keysaw. Upon appeal this decision was, by the commissioner of the general land office, affirmed; but on appeal to the secretary of the interior the decisions of the commissioner and of the local land office were reversed, and the land awarded to Phillips. Final decision of the secretary was made on a motion for review on March 25, 1898, and Phillips filed on the land on April 9, 1898. Pending the contest, Phillips had the possession of the north 90 acres of the land, and Keysaw had the possession of the south 70 acres. In the fall of 1897, J. B. Manns, one of the defendants in error, as tenant for Keysaw, put in 65 acres of wheat upon the 70 acres of ground in the possession of Keysaw. On June 20, 1898, the cutting of this wheat was commenced. On June 16, 1898, this action was commenced by issuing summons, but no application for a temporary injunction was presented, or order of injunction issued, until June 27, 1898, at which time the wheat in controversy had all been cut, and was in the shock on the premises where grown. On said day the court made a temporary order enjoining the defendants from in any manner interfering with the exclusive possession of the plaintiff to the 70 acres of land in controversy, except 3 acres thereof, for a period of 15 days from the date of the order, and from in any way interfering with the exclusive possession of the plaintiff to the whole of the 70 acres, after the expiration of the said 15 days, until a final hearing of the cause should be had. The court also found that Manns, as tenant of Keysaw, was entitled to the possesson of two-thirds of the wheat then in shock on said land, and enjoined Keysaw from the selling or disposing

of the other one-third of said wheat until the trial of the case upon its merits in the court.

Afterwards, in the proceedings in the cause in court, upon motion of the defendant, the plaintiff was required to separately state and number his causes of action contained in his petition, whereupon the plaintiff filed his amended petition, setting forth in the first count his cause of action for the possession of the land, and, in the second count, in addition to the matters alleged in the first, alleged the sowing of the wheat by Keysaw while the 70 acres were in his possession, and the harvesting of the same; that after the decision of the secretary of the interior, rendered July 15, 1897, to wit, on August 16, 1897, before any steps had been taken by Manns or Keysaw to sow any part of said land to wheat for another year, plaintiff notified said defendant, in writing, to the effect that said decision had been rendered in his favor, awarding the land to him, and that the plaintiff was entitled to the possession thereof, and notifying said defendant to refrain from planting said lands to crops, or in any way exercising control thereon; that, notwithstanding such decision and notice, defendant did sow about 60 acres of said tract in wheat. The petition further alleged that the value of the use of said land by said defendants is at least $1,000; that the defendants were insolvent; that the only property owned by defendants out of which any judgment for the value of the use of said land could be made is the crop of wheat upon said land; that the plaintiff was deprived of the opportunity to cultivate said land, and that by reason of the premises he was entitled to the crop of wheat then on the land, as well as the possession of the land; that defendants were about to sell the entire crop of wheat,

and, if so sold, plaintiff would be without remedy at law whereby to recover either the crop itself or the value of the use of the land during that and the prior years the said land had been held by the defendant Keysaw; and praying an injunction against the disposal of said wheat, as in the original petition. To this count of the petition the defendants demurred for the reasons (1) that the court had no jurisdiction of the subject-matter, and no jurisdiction to grant the relief prayed for; (2) because the plaintiff has a plain, adequate, and simple remedy at law to recover the crop of wheat, if he is the owner thereof; and (3) because said paragraph of said petition did not state facts sufficient to constitute a cause of action. On September 13, 1898, the court sustained said demurrer to the second count of the plaintiff's petition. Plaintiff duly excepted, and, electing to stand upon his said petition, and refusing to further plead, the said second cause of action was by the court dismissed, and the temporary order of injunction, in so far as it enjoined the defendant from selling or otherwise disposing of any of the wheat grown upon said land during the season of 1897 and 1898, was dissolved, and from this order plaintiff appealed.

The simple question involved in this case is, who was the owner of the wheat in question when the temporary order of injunction was granted? The fact that the defendant Keysaw was, at the time of the issuing of the injunction, liable to Phillips, or might thereafter become liable, for the mesne profits of the land withheld by him from the possession of Phillips during the pendency of the contest proceedings, or for any other debt, would not give jurisdiction to the court or judge by injunction to prevent him from selling or disposing of the

same, unless Phillips was the owner of said wheat, or had some legal property interest therein.

The injunctional powers of a court of chancery, concededly broad, and, by respectable authority, claimed to be sufficiently latitudinous to authorize its writ to be substituted for the ordinary writ of ejectment, or an order of restitution in forcible entry and detainer, has not yet received judicial sanction as a substitute for the writ of replevin, or to accomplish the purpose of a writ of attachment; and therefore, if the wheat in question was not the property of Phillips, or if he had no legal property interest therein, although Keysaw may have been insolvent, and had no other property out of which a judgment for mesne profits could have been made, a court of equity had no jurisdiction by injunction to attach, or in any manner sequester, the same, in order that it might be applied to the satisfaction of any judgment at law for mesne profits thereafter to be obtained. Was Phillips, then, the owner, or did he have a legal property interest in the wheat in question, which justified invoking the injunctional powers of the court for its protection? The common law relating to the ownership of growing crops is in force in this Territory, unmodified by statute, except in one particular, which is not involved in this case. At the common law, growing crops, produced by annual labor and cultivation, which are called *"fructus industriales,"* for some purposes form a part of the real estate to which they are attached; and unless there has been a severance of them from the land, actual or constructive, they follow the title thereto. For other purposes they are regarded as personalty. In the case of voluntary conveyances of the land, where the growing crop is owned by the grantor, they passed

by the conveyance of the land, unless specially reserved by the grantor, whether the instrument of conveyance evidences an absolute sale, a mortgage, or a lease of the land. Where the land is sold under foreclosure or under execution, the purchaser of the land acquires title to the crops; and when there is a recovery of possession of land held adversely the successful plaintiff is entitled to the growing crops as against the evicted defendant who planted them. Though regarded as part of the realty for the purposes stated, they are classed as personalty for the purposes of levy and sale under attachment and execution, and mostly every other purpose. After the death of the owner, they pass to the executor or administrator; and not to the heir.

There is much confusion in the books upon the question whether growing crops are a part of the realty or whether they are personal property, which confusion arises from a failure to distinguish the condition of the common law upon the subject,—a condition in which it was recognized that for some purposes growing crops were a part of the realty, while for other purposes they were personalty. In 1 Freem. Ex'ns, sec. 113, it is said: "Crops, whether growing, or standing in the field, ready to be harvested, are, when produced by annual cultivation, no part of the realty. They are, therefore, liable to voluntary transfer as chattels. It is equally well settled that they may be seized and sold under execution. * * 'At common law, *fructus industriales*,—as growing corn and other annual produce,—which would go to the executor upon death, may be taken in execution.'"

In 3 Washb. Real Prop. p. 367, the author says: "But although a sale of growing crops of annual culture not yet mature would seem to carry with it an interest in

land, since such crop must stand upon and draw nutriment from the soil until it shall have grown and matured for the har‚est, the cases appear to be quite uniform in holding that the property in the crop would pass with a license to enter and sever the same; and some of the English cases put it upon the same ground as that by which one may hold emblements growing upon the soil of another.    *    *    An attempt to sum up the results of the decisions, although they are not wholly harmonious, ma) be made as follows:    *Fructus industriales,* as has been previously said, are, at common law, chattels, and are governed by the seventeenth section of the statute of frauds.    This seems to be agreed by all the cases, though it is often difficult to decide what are *fructus industriales.*"

The authorities clearly preponderate in support of the proposition that annual crops, fruits of the labor of the tiller of the soil, are subject to levy and sale, as chattels, for the debts of the owner.    (*Johnson v. Walker,* [Neb.] 37 N. W. 640; *Polley v. Johnson,* [Kan. Sup.] 35 Pac. 8; *Ayers v. Hawk,* [N. J. Ch.] 11 Atl. 744.)

In *Caldwell v. Custard,* 7 Kan. 305, it is said: "Testimony showing who was the owner of the land is not evidence as to who ownes the annual crops growing on it. They are personal estate.    (*Whipple v. Foot,* 2 Johns. 418; *Stewart v. Daugherty,* 9 Johns. 108;    *Austin v. Sawyer,* 9 Cow. 39; *Jones v. Flint,* 10 Adol. & E. 753; *Graves v. Weld,* 5 Barn. & Adol. 105.)    So, in this state, they go to the personal representative as personal property, and not to the heir."

In Benj. Sales, p. 126, it is said:    "As to artifical or annual crops,—*fructus industriales,*—the law is clear that

a sale thereof, in whatever state of maturity, and however long they are to remain in the soil in order to complete their growth, is a sale of personal property, and not of an interest in land."

In Iowa the contrary doctrine is held. In *Ellithorpe v. Reidesil*, 32 N. W. 239, the supreme court of that state says: "The whole proceeding was on the theory that the crops were personal property, and could be levied on and sold as such, but while they remained immature, and were being matured by the soil, they were attached to and constituted part of the realty. They could no more be levied upon and sold on execution as personalty than could the trees growing upon the premises. This doctrine is elementary, and it had frequently been declared by this court." (*Downarb v. Groff*, 40 Iowa, 597; *Burleigh v. Piper*, 51 Iowa, 650, 2 N. W. 520; *Hecht v. Dettman*, 56 Iowa, 679, 7 N. W. 495, and 10 N. W. 241; *Martin v. Knapp*, 57 Iowa, 336, 10 N. W. 721.)

While, as we have shown, there is some conflict in the authorities as to whether growing crops, before maturity, are real or personal property, and while there is some conflict as to whether annual crops, after maturity, and before harvested, are chattels, or a part of the real estate passing with the lands, which conflict, we think, arises from a failure to distinguish the condition of the common law upon the question, and for what purpose thereunder growing crops were held to be a part of the realty, and for what purposes they were held to be personalty, therel is no conflict upon the proposition that when such crops are severed from the soil they are personal property for every purpose. We have stated the rule to be that, where there is a recovery of the possession of land held adversely, the successful plaintiff is entitled to the

growing crops as against the evicted defendant who planted them. (8 Am. & Eng. Enc. Law [2d Ed.]· p. 306, and cases cited.)   This was upon the theory that a person who had been ousted from land might, after recovery and re-entry, maintain his action of trespass for the mesne profits and for waste, for the reason that after the re-entry the law supposed he had always been seized, and the acts of the defendant were held to be a continuous trespass upon the rights of possession of the actual owner; but the corollary of this proposition is also sound in law, viz. that, until such adverse possession is terminated by ouster, the party so adversely holding was the owner, and entitled to the crops produced by his annual labor and cultivation, which had been harvested before such ouster.   This was distinctly held in the case of *Rathbane v. Boyd*, 30 Kan. 485, 2 Pac. 664, cited by plaintiff in error.   In that case the court says: "Now, although it was finally decided that the land was not subject to pre-emption by Shrock, and that the plaintiff was entitled thereto, yet Shrock must be deemed to have held the land adversely to the plaintiff.   * *   Plaintiff did not obtain an order for the restitution of the premises until August 15, 1881, and Shrock did not actually relinquish possession until August 24, 1881.   Therefore the crops grown and actually harvested by Shrock, while in possession of the land, are to be regarded as his own; and, while the plaintiff might have recovered for the use and occupation of the premises, he could not maintain an action of replevin for the crops so grown and actually harvested by Shrock." (*Page v. Fowler*, 28 Cal. 605; *Stockwell v. Phelps*, 34 N. Y. 363.)

Numerous well-considered cases, and, as we think, perhaps the weight of authorities, hold that where a crop

is sown by a trespasser, and is by him cultivated and severed, it becomes the personal property of the trespasser, even as against the owner of the land. (8 Am. & Eng. Enc. Law [2d Ed.] p. 329; *Lindsay v. Railway Co.,* 29 Minn. 411, 13 N. W. 191; *Jenkins v. McCoy,* 50 Mo. 348; *McAllister v. Lawler,* 32 Mo. App. 91; *Adams v. Leip,* 71 Mo. 597.)

But it is unnecessary, nor would it be proper, for us to pass upon this proposition, as it is not involved in this case. We only cite these authorities to show that respectable courts hold that not only persons holding adversely, but even trespassers, who plant and cultivate annual crops and sever them from the soil before their possession is terminated, are the owners of such crops.

The only remaining questions are, were the defendants holding adversely to the plaintiff? and was the wheat in question severed from the soil before such possession was terminated? The first of these propositions is settled by the cases of *Peckham v. Faught,* 2 Okl. 173, 37 Pac. 1085, and *Littlefield v. Todd,* 3 Okl. 1, 42 Pac. 10. In each of these cases it is held that: "Where two parties are claiming the right to reside upon a homestead—one by virtue of settlement; the other by reason of a filing in the United States land office—each party has a right to reside upon and occupy the land until the land department has determined to whom the land belongs." In *Peckham v. Faught* it is said: "Each person claiming an inceptive right by virtue of settlement must know that, until the settlement is merged into a filing, the land is subject to an adverse entry by filing by any person who may choose to so enter it at the land office. And if an adverse entry is recorded, such entry carries with it an equal right of occupancy of the land until the

proper tribunal, the land department, shall have determined which of the two claimants are entitled to the land."

The remaining proposition, was the wheat severed from the the soil before the adverse possession of the defendants was terminated? is answered by the plaintiff's petition. It is there shown that the wheat was cut and in the shock when the temporary order of injunction was issued. We must therefore hold: (1) That upon the facts stated in the second count of plaintiff's petition the defendant Keysaw was in adverse possession of the land upon which the wheat in question was grown when the same was sown, and that such adverse possession had not been terminated when the wheat in question was harvested; (2) that Keysaw was the owner of said wheat when harvested, and that the plaintiff had no ownership or right of property therein; (3) that said wheat was no part of the land, but was personal property; and (4) that the court had no jurisdiction by injunction to interfere with the defendants' disposal of the same, and that, therefore, the demurrer to said second count of plaintiff's petition was properly sustained.

II. We cannot entertain defendants in errors' cross appeal. The order appealed from is not an appealable order. An order refusing to vacate or dissolve an injunction is not appealable. The contention of defendants in error that because plaintiff in error has brought here for review that part of the judgment of the court which dissolved the injunction relating to the wheat, the whole case is here, and that we may review the action of the court in refusing to dissolve the injunction relating to the possession of the land, cannot be sustained, for the reason

that there is no finality to that part of the judgment. The order refusing to vacate that part of the injunction, if erroneous may, and probably will, be corrected by the court below upon final hearing when all the proofs are presented. At least it is but justice to the court below that it should, upon a regular trial of the cause, have an opportunity to hear all the proofs that may be presented upon the issue involved, and make final disposition of the case, before we should assume to review his action. The judgment of the court below is affirmed.

Hainer, J., having presided in the court below, not sitting; all of the other Justices concurring.