No. 18,393.

OPINION ON PETITION FOR RECONSIDERATION.

W. H. HOLMES, *Appellant,* v. F. H. HOLT et al., *Appellees,* and ROBERT W. HOLMES et al., *Appellants.*

SYLLABUS BY THE COURT.

1. MORTGAGE—*Deed Given as Security—Lien.* One who has taken a deed for land as a security for a debt may be and under the circumstances of this case is entitled to a lien thereon, although not in position to claim the rights of a mortgagee in possession.

2. SAME—*Payment of Incumbrances by Grantee—Lien.* When in a course of dealing covering different tracts of land he has paid certain incumbrances on separate portions thereof he may be and under the facts here shown is entitled to a lien on all such land to secure such payment.

3. SAME—*Use and Occupation—Good Faith—Crops—Measure of Damages.* One who in good faith believed himself the owner of certain land procured possession thereof by inducing his adversary's tenant to lease from him, such lease to begin at the expiration of the one granted by such adversary, such tenant continuing to cultivate and grow crops on the land. At the end of prolonged litigation it was determined that such possession was wrongful and unlawful. *Held,* that as the possession and appropriation of the crops constituted at most an innocent rather than a willful trespass and the adversary was not in possession and had not raised the crops himself, he was entitled to recover therefor only the fair rental value of the land, and not the net value of such crops after they were grown and gathered.

4. SAME—*Necessary Repairs—Compensation—Accounting.* While such controversy as to title was pending and while the defendant was in possession by tenant he made certain repairs on the barn upon the land which were necessary to prevent it from ruin. *Held,* that in an accounting he should be allowed for such expenditure. Likewise as to a trifling item of repair to a pump while looking after the property for the plaintiff.

5. REFERENCE — *Report — Court Not Bound by Suggestions of Referee.* The trial court after confirming a referee's findings of fact and conclusions of law is not bound by his suggestions embodied in a written opinion filed with his report.

6. SAME—*Power of Court Upon Confirming Referee's Report.* When such report recommends that the defendant be given a lien on the land in controversy for the amount due him from the plaintiff, the court, having confirmed the report, has power and jurisdiction to order the land sold to satisfy such lien notwithstanding the report is to the effect that the defendant is not entitled to a foreclosure of certain deeds decreed to be mortgages.

7. SAME—*Proceedings before Referee—Harmless Error.* While irregular and improper for a referee to consider the report of a survey made in the absence of the plaintiff, still, having thereafter notified the plaintiff to return and view the survey, which he declined to do, and then having heard further testimony with both parties present, and embodied the result in his report, with which no evidence was returned, it is held that no error appears as a result of such irregularity.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion on appellants' petition for reconsideration filed August 8, 1914. Reaffirmed. (For original opinion of affirmance see 90 Kan. 774, 136 Pac. 246. For opinion on rehearing see 92 Kan. 254, 139 Pac. 1030.)

*W. R. Hazen,* of Topeka, for the appellants.

*Bennett R. Wheeler,* and *John F. Switzer,* both of Topeka, for the appellees.

The opinion of the court was delivered by

WEST, J.: This case has been twice decided. (*Holmes v. Holt,* 90 Kan. 774, 136 Pac. 246; 92 Kan. 254, 139 Pac. 1030.) It is insisted, however, by counsel for the plaintiff that divers misstatements ·and omissions justify a reconsideration, and it has been thought proper to make a reëxamination of the case and that the result be formulated.

### THE ISSUES.

From the abstracts it appears that the petition alleged that the plaintiff, about June 27, 1903, contracted with Goodell and wife for the purchase of a 40-acre tract of land and went into possession under the con-

tract; that September 22, 1903, he borrowed of the defendant $1100 to complete the purchase and used it for that purpose; that in the deed from Goodell the plaintiff assumed and agreed to pay a mortgage of $1235 to the Knights & Ladies of Security, and another of $800 to M. J. Cady; that the plaintiff and wife executed a note to the defendant for the $1100 borrowed, and a deed to the land; that plaintiff continued in possession, paying the taxes and the interest on the two mortgages, and made valuable improvements at his own expense, and when the Cady mortgage came due he was unable to pay it, and the defendant took it up, paying the principal and some interest; that in February, 1908, Juneau and wife, with the consent of the plaintiff, entered into a contract with the defendant for the purchase of 13 acres of the Goodell tract "lying on the north part of said tract" for $3500, and the plaintiff delivered up possession to the purchasers, who made certain payments to the defendant and then defaulted, and about March 1, 1909, the plaintiff procured Juneau to enter into a lease for the 13 acres for one year to the defendant, and Juneau was holding possession thereunder; that it was mutually agreed between plaintiff and defendant that the rent collected from Juneau should be applied by the defendant on the indebtedness due him from the plaintiff, and that certain sums were collected; that about May 3, 1909, Mrs. Juneau, with the knowledge of the defendant, executed to plaintiff a written lease for the remainder of the 40 acres, to expire the last day of February, 1910, whereupon the plaintiff delivered possession of the 27 acres to the Juneaus; that the deed to the defendant was intended and delivered as a mortgage to secure the repayment of the $1100 borrowed of him. Then followed allegations that plaintiff was entitled to possession; that his interest in the land was of the value of $3000; that the Knights & Ladies of Security claimed an interest under their mortgage; that the Juneaus had no right, title or

interest, and that plaintiff was informed and believed that they had leased all the 40-acre tract of the defendant and intended to repudiate plaintiff's possession and title to the 27 acres, and would, unless restrained, take possession of the entire tract.

A second cause of action averred that on or about March 1, 1905, the plaintiff purchased a tract of land, 30 acres more or less, immediately west of the 40-acre tract, for $2400, and borrowed $1800 of the defendant to complete the purchase, which was completed by paying the $1800 so borrowed and $600 of plaintiff's own money, the deed being taken in the name of the defendant to secure the repayment of the sum borrowed; that about the same date the defendant contracted to convey to plaintiff this 30-acre tract upon repaying the $1800 with interest in monthly installments of $25 each, several of which payments were afterwards made; that September, 1905, plaintiff and defendant sold the north 27 acres of this tract—lying north of the railroad right of way—to one Weaver for $3500, $3000 payable in cash and $500 secured by mortgage; that plaintiff paid defendant $1800, and the plaintiff had ever since been in possession of the remaining 3 acres, more or less, south of the right of way; that the Juneaus were then in possession of the 3 acres as tenants of plaintiff, but their right terminated on the last day of February, 1910, and plaintiff was entitled to possession; that the deed and contract executed by the defendant and plaintiff were intended as a mortgage; that the sum received, $1800, had been paid, and plaintiff was entitled to a conveyance from the defendant for the 3-acre tract.

The prayer was for a decree that the deed mentioned in the first cause of action was a mortgage; that an accounting be had; that the defendant be required to convey the 3 acres; that the title of plaintiff be quieted as against the Juneaus, and that they be restrained from entering into possession of the 27-acre tract or the 3-acre tract, and for costs and general relief.

This petition was filed February 28, 1910. April 26, thereafter, the defendant filed an answer and application for injunction, alleging that he was owner in fee simple of all the lands in controversy and in peaceable possession except that he had leased to Juneau, who held as his tenant; that the alfalfa needed caring for, and the plaintiff was interfering and threatening to take possession of the land and harvest the alfalfa crop, and asking for an injunction and that defendant's title be quieted as against the plaintiff. The application for injunction was verified, and on the same day a restraining order was granted. December 15, 1910, the defendant filed an amended answer, alleging that on or about January 27, 1905, he had contracted to sell the land to plaintiff, who had failed to comply with the terms of the contract and had forfeited all interest, right or claim to the premises, and asking that defendant's title be quieted. December 28, 1910, plaintiff filed a reply, alleging, among other things, that when the contract was executed the land was a homestead, that up to August, 1909, plaintiff had paid all the taxes and insurance, and that until a short time before the action was begun the defendant had always admitted that the deeds were security for a loan.

### THE TRIAL AND ITS RESULTS.

March 22, 1911, trial was had before the court, a jury having been waived, and judgment was rendered in favor of the plaintiff, the deed first pleaded was decreed a mortgage, and the restraining order was vacated, "and by consent of the attorneys for both plaintiff and defendant it is ordered that the accounting to be taken herein between said plaintiff and defendant be continued for further hearing before the court." The plaintiff was given judgment for costs, a motion for a new trial was overruled, likewise a motion to dismiss any claim for an accounting, and leave was given to file an amended and supplemental answer and to make new parties. May 9, 1911, an amended and supple-

mental answer was filed, alleging that until the decree the defendant had believed in good faith that he was the owner of the land, and acting upon such belief he had with his own money paid the taxes and assessments after plaintiff's default; that he had paid the Cady mortgage — $822.20 — certain interest on the other mortgage and divers sums for insurance, repairs and permanent improvements; that the amount due him was in dispute; that on January 5, 1911, plaintiff and wife deeded all the land to Robert W. Holmes for the consideration of $2000 for which the grantee and wife had executed a mortgage to plaintiff, although no consideration in fact passed. The prayer was for a decree appointing a referee to take an accounting, to make the sum due defendant a lien on the land, and other relief. To this W. H. and Robert W. Holmes and wife demurred—denying the jurisdiction of the court over them or the subject matter or the matter of a reference —which demurrer was overruled.

July 24, 1911, over the objection of the Holmeses, a referee was appointed, the order directing that the parties submit their accounts to him, he to make findings of fact and conclusions of law. A hearing was had before the referee, who found that the plaintiff went into possession of a tract of land containing about 40 acres under a contract to purchase and borrowed $1100 of the defendant and executed a note for that sum and a warranty deed for the land; that plaintiff in buying the Goodell land of 30 acres borrowed $1800 of the defendant and the deed was made to the latter as security; that the defendant contracted to convey to the plaintiff the two tracts of land for $2900, that being the sum of the two amounts borrowed; that while this contract was prior to the execution of the Goodell deed it was a part of the transaction; that time was made the essence of this contract, which contained stringent provisions for forfeiting all the plaintiff's rights in case of failure to perform; that plaintiff sold Weaver 27 acres of the

30-acre tract for $3500, which was conveyed by the defendant to Weaver, and $1800 of the sale price was paid and turned over to the defendant, who delivered to the plaintiff the $1100 note; that the $1800 at this time turned over paid that portion of the $2900 consideration for the contract just mentioned, and that the parties agreed that on September 1, 1905, the plaintiff had paid all of his indebtedness at that time involved in the accounting except the $1100, which was to draw interest at 8 per cent; that in February, 1908, the Juneaus went upon the 13 acres under a contract to purchase, agreed to by the plaintiff and defendant, which contract was abandoned and given up with their consent, and the Juneaus continued to hold under an agreement to pay rent of $144 cash per annum until March 1, 1909, and did not acquire or claim to have acquired any rights of ownership or possession under the contract of purchase; that the plaintiff with his family occupied the 40-acre tract as a homestead from the time he took possession, from June, 1903, up to March, 1908, when he moved away with his family and ceased to occupy the land as a homestead, his occupancy being subject to the Juneaus' possession of the 13 acres; that plaintiff also occupied as a part of his homestead the 30 acres of land from January, 1905, until the sale to Weaver September 1, 1905; that during the year March 1, 1909, to 1910 the Juneaus were in possession of the 30 acres under the lease already mentioned and were in possession of the rest of the land owned by Holmes under a written lease from him to Mrs. Juneau, the rental to consist of a share of the crops, mainly alfalfa, and the lease by its terms to expire the last day of February, 1910. The landlord's share was turned over and received by the plaintiff. In January, 1910, the defendant, at the request of the plaintiff, went to Kansas City to see him, when some discussion of an accounting was had, and very soon thereafter the defendant notified the plaintiff that the latter had no further interest in the

land and that the defendant was the absolute owner thereof, the contract having been forfeited and canceled; that the plaintiff had in fact been in default for a long time in making his payments called for by the contract. Sometime after this the defendant procured the Juneaus to enter into a lease with him for all of the land for twelve months beginning March 1, 1910, and ending February 28, 1911, partly for cash, and for about 27 acres of the land for one-half of the alfalfa in the barn and one-third of all other crops marketed grown thereon. February 28, 1911, another lease was entered into for another year, the rental for the 27 acres being $75 when the alfalfa should be sold; that on January 18, 1908, the Cady mortgage was paid by the defendant, who took an assignment to himself, such mortgage bearing 7 per cent interest payable semiannually, such payment being made with the knowledge and consent of the plaintiff; that it was agreed between the plaintiff and defendant that whatever money was expended by the latter for interest and taxes should be repaid by the plaintiff with interest at 8 per cent; that the defendant had paid out certain amounts for repairs of different kinds; that there was no contract or agreement that the defendant was to receive any compensation for looking after the property; that at the time such services were rendered he did not intend to charge therefor. It was found that of the 27 acres about 22 were in alfalfa, and that the defendant should be charged with the rental value thereof based on the net value of the crop, which was $220 for the year 1910 and $264 for the year 1911. As conclusions of law the referee reported that from the first day of March, 1910, plaintiff was entitled to possession of the land involved, and that the possession obtained by the defendant under the lease with the Juneaus, dated January 29, 1910, was wrongful and unlawful, and that the defendant was not a mortgagee in possesion or entitled to the rights of a mortgagee in possession; that the plaintiff must ac-

Holmes v. Holt.

count to the defendant for $1100 unpaid September 1, 1905, for certain interest on the two mortgages, and for repairs in 1909 and 1910 amounting to $57.40 and was entitled to credit for the rental value of the alfalfa land for 1910-1911, and certain other sums received by the defendant, the latter being entitled to a lien on the property for the balance due him but not entitled to retain possession; that upon payment by plaintiff to the defendant of the amount due, the latter and wife should convey to the former all of the Goodell tract not conveyed to Weaver, plaintiff's title thereto being quieted as against the defendant.

At the time of the argument and exceptions to the report of the referee the amount of the alfalfa land appeared to be in doubt, and it was agreed that the case be re-referred for the purpose of determining the amount by actual survey, and that both parties, plaintiff and defendant, should be present at any survey made. The defendant took the county surveyor to the land and had it surveyed without notifying the other side, but plaintiff was notified of the result and requested to go back and view the survey but declined unless the entire case should be opened up. After this refusal the referee heard evidence with both parties present, and filed a supplemental report changing the amount due for alfalfa and corn land for 1910-'11. Before any proceedings were had before the referee the plaintiff filed a written protest against proceeding, and on this re-reference and before testimony was taken a demand was made that if any testimony was taken regarding the acreage of alfalfa the matter be opened up for testimony for anything involved in the accounting, which exceptions were overruled and the report was confirmed and adopted, and the balance of $1914.26 found due the defendant adjudged a lien upon the land. A motion for a new trial was overruled.

### ASSIGNMENT OF ERRORS.

The errors assigned are: Overruling the motion to dismiss the part of the suit pertaining to an accounting and appointing a referee; permitting the amended and supplemental answer to be filed; making the second order of reference; overruling motion for new trial; confirming the report of the referee, special complaint being made of the report touching the alfalfa, allowance of 8 per cent interest, giving a lien on all the land for the amount due and the second survey made in the absence of the plaintiff, rendering judgment for sale of the land without foreclosure and adjudging that each party pay one-half of the total costs, and overruling the demurrer to the amended answer and cross-petition.

### PENDING COMPLAINTS.

After the rehearing was denied the plaintiff filed a petition for reconsideration, requesting a decision upon the following matters, asserting that it could not be discovered from the opinion that such questions were involved or considered.

"2. Appellants' appeal from the following rulings of the trial court have not been decided:

"(a) A judgment creating a mortgage lien on land not included in the mortgage and ordering such land sold to pay such lien.

"(b) That one unlawfully and wrongfully taking another's land, growing in alfalfa, may appropriate such alfalfa of the net value of $1260 and account for the rental value of the land $484, with a net profit to the wrongdoer of $776.

"(c) A referee's report, after filed, may be changed at defendant's request to agree with his private survey made in the absence of the plaintiff.

"(d) A trial court may approve a referee's report and then render judgment contrary thereto, and may render judgment that the plaintiff pay half the costs, for which, such plaintiff had recovered judgment more than a year before.

"(e) May allow a party who has wrongfully and unlawfully taken possession of another's property to make improvements thereon and have judgment against the

.owner for the costs of such improvements and the land ordered sold to pay the same, notwithstanding a tenant in the rightful and peaceable possession can not under the law recover for such improvements."

The most casual reading of the opinion (90 Kan. 774, 136 Pac. 246) will demonstrate that items *b, c* and *e* were passed upon, though of course not in the exact form in which they are stated in the petition for reconsideration. The three items, the amount of alfalfa chargeable to the defendant, the re-reference, and the second report concerning the acreage, and the claim for improvements were all expressly mentioned. However, disregarding this error of statement concerning the former decision, we will consider each of the five points urged, in their order.

(*a*) It is argued that the defendant had purchased the Cady mortgage covering the land south of the right of way and had paid some interest on a mortgage covering a different tract north of the right of way—one small tract not being covered by either nor by the deed decreed to be a mortgage, and that the court added the two items of interest on the two mortgages and decreed the sum a lien on the three tracts, although nothing in the record or in the referee's report showed any agreement for a lien on any land for the interest. The referee was directed to report the amounts due the parties "on account of the land in controversy herein," for the dealings out of which the indebtedness grew involved all the land although the mortgages themselves covered only separate portions thereof. The contract of January 27, 1905, covered the 40-acre and the 30-acre tracts, which included the 3 acres under discussion, and while the Cady mortgage was not a lien on the 3-acre tract, nor the other mortgage, still the entire seventy acres had been dealt with by the plaintiff and defendant and the amount found due was the result of all such transactions, and while no agreement appears that any of the land should be subject to a lien for the balance due—the court treated all that remained like the first 40 acres—as liable for the payment of such balance, and the error, if any, consists in so treating any of the land—not in the inclusion of

2—93 KAN.

the 3-acre tract. In his opinion the referee said that Holt was entitled to a lien for the $1100, for the amounts paid out by him on the two mortgages, and for taxes and insurance, and the trial court took the same view.

That we approved the doctrine involved is shown by the former opinion, in which it was once stated that the referee's conclusions of law are correct, and again that the solution of the numerous questions was fair and that the judgment is equitable to all parties. The present motion is in this respect leveled only at the inclusion of the 3 acres, which we still think equitable and correct.

(b) It is insisted and reiterated that one unlawfully taking another's land and appropriating alfalfa growing thereon must account for the net value of the alfalfa and not merely for the rental value of the land. This is postulated upon the theory that the defendant schemed to deceive the plaintiff into believing that upon his return from the Kansas City trip he would sent him a statement of account, but instead proceeded to gain possession by "concealment, unscrupulous intrigue, conspiracy and fraud." True, it was found that the expense money for the trip was returned to the plaintiff, who had long been in default, and who was notified that the contract had been canceled; that thereafter, on January 29, 1910, the defendant procured the Juneaus to lease from him the land for one year beginning March 1, 1910, and thereafter executed to them another lease for 1911, and that the first one was made without the authority or consent of the plaintiff, who, on or about March 1, demanded of the Juneaus possession. But as their lease from plaintiff by its terms expired with February, 1910, the one taken by the defendant did not interfere therewith, for it began on the expiration of the former. The referee concluded that the possession of the defendant by the Juneaus beginning March 1, 1910, was wrongful and unlawful, but he found that the repairs and improvements were made by Holt "while believing and supposing in good faith himself to be the owner of said property" and these were made at various times from December, 1909, to May, 1911, and in his opinion,

Holmes v. Holt.

which appears in the record, he stated that "the plaintiff brought suit to have the deed declared to be a mortgage as soon as he learned that the defendant Holt was claiming the possession and ownership of the land, and the plaintiff has contested the possession of the defendant Holt at all stages of the proceeding. The defendant Holt is not in position to further claim possession of the land." Again, "The plaintiff was not in possession in person and was not ousted of the actual possession of the land. Neither did the defendant occupy the land in person."

We think these findings and statements indicate a *bona fide* belief in his ownership and a right to lease to a tenant rather than a willful trespass on the part of the defendant, and that the basis of the argument failing, the conclusion reached must likewise fail. Besides, the findings expressly show that "For the purposes of this account the plaintiff waived his claim to other rent for 1910 and 1911 as to the said 13 acres than the cash actually received, and consented that the referee should charge the defendant only with said amounts." Again, under the plaintiff's lease to the Juneaus he was to receive a share of the alfalfa on the 27 acres and $144 for the 13 acres which was what the defendant was to receive under his first lease, while under the second he was to have $144 for the 13 acres and $75 for the 27 acres, but the referee required him to account to the plaintiff for $132.50 for the first year and $159 for the second for the alfalfa land. Hence the plaintiff has not lost much. At all events we are unable to hold that the trial court erred in confirming this part of the referee's report.

Counsel says of the plaintiff, "It was *his* land, *his* alfalfa while growing on *his* land, *his* when severed from the soil and when 'wrongfully and unlawfully taken and converted, the *value* was *his*.' " But it must be remembered that these matters were not yet determined, and that the defendant was in possession by tenant, claiming title and ownership, and each case must be considered according to the situation disclosed by the

facts presented. Numerous authorities cited by counsel are to the effect that a trespasser is liable for the value of property taken from the freehold, and that where he acts maliciously he may be held for punitive damages. In *Rathbone v. Boyd*, 30 Kan. 485, 2 Pac. 664, R. had made a timber culture entry, and S., after filing a preparatory statement of intention to purchase the same land, paid the land-office fees, obtained a certificate of entry and was in possession for three years, contesting with R. the title to the land. His entry was finally canceled and R. obtained the land. It was held that R. could not maintain replevin for wheat sown and harvested while S. was in possession, and that S. had the right to mortgage the same while in actual possession thereof. This case was cited with approval in *Phillips v. Keysaw et al.*, 7 Okla. 674, 56 Pac. 695, where a like conclusion was reached with reference to facts quite similar. In *Sunnyside Coal & Coke Co. v. Reitz*, 14 Ind. App. 478, 39 N. E. 541, 43 N. E. 46, a distinction is made between a trespasser and a willful trespasser. In *United States v. Homestake Min. Co.*, 117 Fed. 481, it was held that the limit of liability for damages of one who takes ore or timber from the land of another through inadvertance or mistake or in the honest belief that he is acting within his legal rights is the value of the ore in the mines and of the timber in the trees; that the test between an innocent and a willful trespasser is one of honest belief and actual intention, following *Woodenware Co. v. United States*, 106 U. S. 432. The decision last referred to was by Mr. Justice Miller, who said:

"On the other hand, the weight of authority in this country as well as in England favors the doctrine that where the trespass is the result of inadvertence or mistake, and when the wrong was not intentional, the value of the property when first taken must govern; or if the conversion sued for was after value had been added to it by the work of the defendant, he should be credited with this addition." (p. 434.)

The referee concluded that Holmes was entitled to possession on and after March 1, 1910, and that Holt's possession by the Juneaus was "wrongful and unlawful." In his "opinion" this was given as the reason why Holt could not "claim the right to retain his possession until he is repaid, and this is especially true in view of the decision of this court in setting aside the restraining order issued against the plaintiff," which may serve to explain the referee's use of the words, "wrongful and unlawful." This restraining order was not set aside until March 22, 1911, and hence up to that time Holt's possession by tenant was in a manner under judicial protection, another feature which takes the case out of the class of ordinary willful trespasses.

(c) Changing the referee's report "at defendant's request to agree with his private survey made in the absence of the plaintiff."

The circumstances of this change have already been stated. While it was, of course, irregular and improper for the referee to consider the survey made in the absence of the plaintiff, the latter was notified of the result and requested to go and view the survey; which he declined to do as already indicated, and after this the referee heard evidence with both parties present; and as none of the evidence was brought up we can not say that the supplemental report was unsupported or erroneous but must, like the trial court, deem it proper.

(d) Approving a referee's report and rendering judgment contrary thereto.

When the original judgment declaring the deed a mortgage was rendered the plaintiff was given judgment for his costs, $18.80. The referee recommended that the costs of the reference be denied, but this recommendation was not embraced in his findings of fact or conclusions of law but in the opinion filed therewith. The court ordered that the defendant pay one-half the costs of the action up to the date of the judgment, and that the proceeds of the land, if sold, be

applied, first, in payment of taxes, and second, "in payment of one-half the costs of this action, which have accrued at the date of this decree," third, to the costs of sale, and fourth, to the payment of the sum due the defendant. It is not clear that the plaintiff can justly claim that he was adjudged to pay one-half of the costs "for which such plaintiff had recovered judgment more than a year before." . Indeed, we read the journal entry to mean clearly that the defendant is to pay one-half the costs up to the date of entry, but not to require the plaintiff to pay anything save as he might do so indirectly by taking one-half the costs out of the proceeds of a sale of the land. At any rate we are unable to see wherein the plaintiff is in any wise prejudiced by the judgment so far as it relates to costs. But it is contended that the referee's report that the mortgage could not be foreclosed was first approved and then departed from by an order that the land be sold to pay the balance due if not paid in 30 days. The portion of the report here referred to is found only in the opinion filed by the referee. The sixth conclusion of law was that Holt was entitled to a lien on the property involved, but that he was not entitled to retain possession until his claim was paid. The court followed this conclusion as to the lien and proceeded to make it effective by ordering a sale. This was not inconsistent with the findings and conclusions of the referee, but only with one item of his opinion, which, of course, the court was not bound to consider as anything else than an opinion. The referee had been delegated to find and report concerning the accounting, with no authority to advise the court as to the propriety of a foreclosure. The trial court acted in accordance with the spirit of *Live Stock Co. v. Trading Co.*, 87 Kan. 221, 234, 123 Pac. 733, wherein this court modified the judgment below by requiring the lien to be enforced by a sheriff's sale. The court had jurisdiction of the parties and of the subject matter, and it was proper to provide for clearing the

land of the lien and for paying the debt due the defendant. We are admonished by the civil code to disregard all technical errors which do not appear to have prejudicially affected the substantial rights of the party complaining "where it appears upon the whole record that substantial justice has been done by the judgment or order of the trial court" (§ 581), which quotation accurately defines our view of the result of the decision appealed from.

(e) Pay for repairs.

While the sum allowed for this item is small—$7.15 for repairing a pump, and $50.25 for repairs on the barn—still the principle involved is important. The referee found that the pump was repaired while the defendant was looking after the property for the plaintiff and before the former took possession. The expense on the barn was incurred to save it from falling and going to pieces, and was necessary to preserve and care for it. Counsel in his original brief insists that the barn was repaired by Holt after Holmes had "commenced his suit to wrest from him his unlawful possession and after Holmes had been restrained from interfering." The dates fixed by the referee are May and June, 1910, and at those times the plaintiff was restrained from interfering with the possession of the real estate, so that Holt was not only claiming ownership and right of possession but his claim to the latter was temporarily protected by the court. *Bowman v. Hazen,* 69 Kan. 682, 77 Pac. 589, is cited, and the writer has a lively recollection of the force and meaning of that decision in a case which he briefed with considerable confidence to obtain a contrary ruling. But there the possession was deemed that of trespassers—quite rank trespassers, too. It is clear beyond dispute that when this repair was made on the barn each party claimed title and right of possession, and it was only at the end of a lawsuit that the rightfulness of their claim was determined. In the meantime, the barn must be

repaired or fall down. It certainly seems equitable that under the circumstances shown in the general account-ing this item be credited to Holt, who, as the findings repeatedly show, was acting in the *bona fide* belief that he owned the property, and hence could not have been attempting to saddle the real owner with a needless bill of expense. At the common law one was under no obligations to pay for unauthorized improvements made on his land and one making them without his knowl-edge or consent could not recover therefor even though he acted under a *bona fide* belief of ownership. This doctrine has been modified on equitable grounds in many states. (22 Cyc. 11.) Under the civil law the rule was that one ought not to enrich himself at the expense of another, and courts of equity following this rule require one who recovers lands and rents and pro-vides that he make compensation to a *bona fide* occupant for his permanent improvements. "This right to com-pensation exists under the principles of equity, inde-pendent of statutory provisions allowing its assertion in certain actions, although it has been held that if no claim is made for rents and profits no allowance can be made for improvements." (22 Cyc. 12.) In *Cle-land v. Clark,* 123 Mich. 179, 81 N. W. 1086, 81 Am. St. Rep. 161, the court said: "The theory of all the better-ment laws is that no one should be made richer at the expense of another." (p. 183. See, also, *George.v. Delaney,* 111 La. 706, 35 South. 894.) In *Succession of White,* 51 La. Ann. 1702, 26 South. 428, it was held that a son having gone upon the land in pursuance of a donation, believing himself the owner, and having erected improvements thereon, was entitled to compen-sation therefor. In *Voiers v. Atkins Bros.,* 113 La. 303, 36 South. 974, it was held that:

"The possessor in bad faith is entitled to recover from the owner of the soil only for those improvements for which the owner may order the removal. He can not recover for ditching, clearing land, and other im-provements inseparable from the soil. It makes no

Holmes v. Holt.

difference how much the value of the land has been en-
hanced thereby. In such a case the principle by which
one man is not permitted to enrich himself at the ex-
pense of another has no application.

"This does not apply to expenses incurred in. the
preservation of the property, and does not prevent a
possessor in bad faith from offsetting the claim of the
owner against him for fruits and revenues, by a claim
on his part for expenses incurred in useful improve-
ments upon the property to the extent that the owner is
benefited thereby." (Syl. ¶¶ 3, 4.)

While this decision was made in view of the Louisiana
code, it is in accordance with the principles of the civil
law and of equity. In *Wood v. Cahill,* 21 Tex. Civ. App.
38, 50 S. W. 1071, the rule was laid down that "One has
an equitable right independent to that of the statute to
recover the value of improvements placed on another's
land in good faith." (50 S. W. 1071, syl. ¶ 2.) 10
A. & E. Encycl. of L. 543, states that the equity of the
*bona fide* possessor who had made permanent improve-
ments upon the land which turned out to be another's
was so strong and persuasive as to eventually enforce
its recognition upon the courts of law without the aid of
statutes.

It appears, therefore, that the rule followed by the
referee and the trial court finds sufficient support in
principle and in authority and must be approved.

Counsel complains that the syllabus contained the
statement that "Rates of interest, not exceeding ten
per cent per annum, agreed upon by the parties to a
transaction will be allowed by the courts" (90 Kan.
774, syl. ¶ 3), and construes this as an intimation that
he at some time in the progress of the litigation dis-
puted the proposition. No such significance was in-
tended to be conveyed by the language used, which
was in effect a repetition of the statement in finding
No. 22 that certain rates and matters of interest had
been agreed upon.

The expression found in the opinion that the evidence
justified a certain finding is criticized upon the ground

that there is not one word of evidence found in the record. The point is well taken and the expression complained of may be considered eliminated from the opinion.

The petition for reconsideration appears to be based somewhat on "other reasons not herein set forth." In another way counsel has advised that the expression in the former opinion that "numerous objections are made to the findings of fact and conclusions of law made" is erroneous and in disregard of the statement in his original brief that "There can be no mistake about the facts as they are all taken from the pleadings, journal entries and report of the referee." Certainly the briefs contain complaints touching the finding on reference as to the acreage of alfalfa and divers conclusions of law, but whatever inaccuracy is contained in the expression under consideration may be regarded as expunged.

The litigation has been prolonged and irritating, and counsel for the plaintiff, with his experience, learning and ability, has pressed with vigor the points contended for by him, and we have for the third time considered the case in order to avoid if possible any mistake as to the facts or the law.

After thus giving patient and careful attention to every question involved, we are unable to depart from the result of the first decision.

Except in the minor respects indicated, the former opinions will remain unchanged.