No. 35,876

John Wolf, *Appellant*, v. Martin Weissbeck and Pius Weissbeck, *Appellees.*

(139 P. 2d 398)

Opinion filed July 10, 1943.

*R. H. Thompson,* of Gove, and *J. H. Jenson,* of Oakley, were on the briefs for the appellant.

*William Wagner, Jr.,* of Wakeeney, argued the cause, and *W. H. Wagner* and *Paul W. Applegate,* both of Wakeeney, were on the briefs for the appellees.

The opinion of the court was delivered by

Dawson, C. J.: This is an appeal from a judgment sustaining a demurrer to plaintiff's evidence in an action for damages for the alleged conversion of wheat and barley which were the crops harvested from a half section of Gove county land in 1942.

Plaintiff's petition alleged that he was the owner of the property and that defendants had converted it to their own use.

One defendant, Martin Weissbeck, answered with a general denial, disclaimed any interest in the subject matter, and prayed to be protected against costs.

The other defendant, Pius Weissbeck, answered with a general denial, and alleged that he planted the wheat and barley crops harvested in 1942, and that he was the owner of them and entitled thereto and to the proceeds thereof. Whatever other matters were alleged in the pleadings or set out as exhibits which may require attention will be noted as we proceed.

A jury was called to try the issues. Oral testimony was offered by plaintiff and a considerable amount of documentary evidence was introduced. By the time plaintiff rested his cause the controlling facts had been developed without material dispute. Defendant's

demurrer to plaintiff's evidence was sustained, and the cause is brought here to test the propriety of that ruling.

Summarizing the pertinent facts, it appears that the land on which the wheat and barley crops were grown belonged to one P. A. Denning, an insane person, resident of Ellis county, for whose estate one Albert Schlyer was guardian by appointment of the probate court of Ellis county. The plaintiff John Wolf was the tenant of the land under a two-years' lease which was to expire on August 1, 1942, but that lease also contained a clause which made its duration subject to a sale of the premises.

On or about September 22, 1941, Albert Schlyer, guardian of the land owner, and Pius Weissbeck entered into a written contract for the sale of the land to Weissbeck, at an agreed price of $2,300, of which sum $250 was paid down and the balance was to be paid on specified terms. This contract stated specifically that it was being made subject to the approval of the probate court of Ellis county, and that Schlyer, the guardian, should proceed with diligence to petition that court for authority to sell the land to Weissbeck as the contract provided. Schlyer the guardian, did so, and the probate court set a hearing for October 17, 1941. The proper notice was given and due proof of service and of publication was filed.

In the late evening of the same day the contract was made, Weissbeck with two companions called on the tenant John Wolf and informed him that he had bought the land and desired to plant the wheat crop. After some talk Weissbeck and Wolf made a written agreement whereby Wolf agreed to give full possession, upon Weissbeck's obligation to pay Wolf for labor performed, and repairs to fences and improvements, viz.:

| | |
|---|---:|
| 35 acres summer fallow, $2.00 per acre | $70.00 |
| 12 acres plowed, $1.00 per acre | 12.00 |
| 50 acres one-wayed, 50c per acre | 25.00 |
| 94 hedge posts set into the fence, 15c post | 14.10 |
| Repairs put onto windmill | 2.00 |
| Total | $123.10 |

This agreement further provided that $53 of the foregoing amount should be satisfied by Wolf having the use of the pasture on the land from October, 1941, to September 30, 1942, and that Weisbeck should pay to Wolf the balance in cash "whenever title is acceptable and deed is delivered in connection with the purchase of the above-described land."

Pursuant to this agreement between Weissbeck and Wolf, the latter vacated the premises and Weissbeck took possession, planted 97 acres of fall wheat, and planted a crop of barley in the following spring; and it is the crops so grown and harvested in 1942 to which plaintiff laid claim in this lawsuit.

On October 17, 1941, the probate court of Ellis county approved the contract of sale between Schlyer, guardian, and Weissbeck. However, Schlyer, guardian, did not consummate the contract he had made with Weissbeck and which the probate court had thus sanctioned—apparently for the reason that a third party had made a much higher offer for the property. Writing to Wolf the probate judge explained briefly, "I only wish you to know that . . . there was some misunderstanding about the sale of the property. It was Schlyer who withdrew the petition."

Along in November, 1941, Wolf learned that Weissbeck had not bought the land, and sometime later he brought some sort of injunction suit against Weissbeck which came to naught. On February 25, 1942, Schyler, guardian, notified Weissbeck to vacate the premises, notified him not to plant any spring crop, corn, or fodder on the premises, and—

"You are further notified that I do not recognize you as tenant of said real estate, but if for any reason or cause you should have or it should be determined that you have any rights as tenant or otherwise, such rights, claims or tenancy is hereby terminated, *and that unless you quit, vacate and leave said premises on or before the 1st day of August, 1942,* an action will be brought against you to recover possession of said premises, and for all damages suffered whether to said premises, or for the detention thereof or otherwise. . . . (Our italics.)

"(Signed)     P. A. DENNING,
(Signed)     ALBERT SCHLYER, *Guardian,*
*Guardian of P. A. Denning, owner of the above-described land.*"

About that time, date not shown, Weissbeck filed a petition in the probate court reciting the pertinent facts, including a reminder of the probate court's order of October 17, 1941, authorizing the guardian to consummate the contract of September 22, 1941, for the sale of the property to Weissbeck, and praying for a hearing on the matter and for an order to the guardian directing him to complete the sale to Weissbeck.

The probate court ordered the matter set down for hearing on April 15, 1942, at which time the guardian moved to dismiss Weiss-

beck's petition. This motion was sustained. Sometime later the probate court sanctioned a sale of the property to a third party for $5,100, which, perhaps should be regarded as the explanation of the guardian's failure to carry out his contract with Weissbeck, and a sufficient justification for the probate court's refusal to order him to do so. The paramount duty of the guardian and of the probate court was to protect the estate of its unfortunate owner, ward of that court; and the guardian and the court were privileged to change their minds. Even courts of general jurisdiction frequently exercise that prerogative. (*Burnham v. Burnham,* 120 Kan. 90, 93, 242 Pac. 124.)

Weissbeck clung to his possession of the property until he had harvested the crops of 1942, and this action in *replevin* was brought by Wolf to obtain possession of those crops or their value.

In sustaining the demurrer to plaintiff's evidence which in effect denied him a recovery of the wheat and barley crops for the season of 1942 planted and harvested by Weissbeck on any theory of replevin, the trial court rendered an informal opinion which, in part, reads:

"A very similar case to the one before us now, is the case of *Rathbone v. Boyd,* 30 Kan. 485, wherein the court said:

" 'At common law, a person who had been ousted from land might, after recovery and reëntry, maintain his action of trespass for the mesne profits and for waste; for the reason that after the reëntry, the law supposed he had always been seized, and the acts of the defendant were held to be a continuous trespass upon the rightful possession of the actual owner. In [that] case, the plaintiff did obtain an order for the restitution of the premises until August 15, 1881, and Shrock did not actually relinquish possession until August 24, 1881. Therefore the crops grown and actually harvested by Shrock, while in possession of the land, are to be regarded as his own; and while the plaintiff might have recovered for the use and occupation of the premises, he could not maintain an action of replevin for the crops so grown and actually harvested by Shrock.' . . .

"In *State v. Salisberry,* 49 Kan. 160, the same doctrine is enunciated. Under the doctrine of replevin, that isn't the proper remedy, . . .

"Also [see] 57 A. L. R. 578, and to the same effect is 45 Am. St. Reports, 53, and 17 C. J. 381 and 382, which follow the same doctrine.

"Now, it seems to the court it is incumbent in order for the plaintiff to make a cause of action, that he prove each and all of the elements of a conversion. The evidence shows that the defendants or some one of them was actually given possession by the plaintiff. That is shown positively by the plaintiff's own testimony, that he gave the defendants possession, which, the court thinks, brings the case under the law that I have just been reading."

Counsel for appellant contends that if the trial court's ruling and judgment were correct a great injustice has been brought about by fraud and misrepresentation which cannot be remedied. But the record contains no evidence of fraud nor of willful misrepresentation. Weissbeck did have a contract to purchase the land when he called on Wolf to negotiate with him for the possession of the farm. That was the 22d day of September, at the season of the year when wheat planting is always a matter of immediate urgency. Weissbeck did not willfully misrepresent to Wolf the fact that he had purchased the farm. He believed in good faith that his contract of purchase would be carried out by Schlyer the guardian—that the sanction of the probate court would be promptly sought, and that the property would be conveyed to him. Indeed the written contract between Wolf and Weissbeck for the immediate possession of the land fairly apprised Wolf that the transaction for the purchase of the land had not on that date been completed, particularly where it recited that—

"It is mutually agreed between the parties hereto, that this agreement is necessary and in conjunction with the purchase of the above described land by the party of the first part from the present owner, P. A. Denning, through his guardian Albert Schlyer, Hays, Kansas. It is further agreed that party of the first part is to make payment of the $70 balance due the party of the second part whenever title is acceptable and deed is delivered in connection with the purchase of the above described land."

In the paragraph just quoted Wolf was made to understand that he was not to be paid for the summer fallowing and his other work nor for the fence posts nor for the repairs on the windmill until title to the land was acceptable and until the deed was "delivered in connection with the purchase" of the land.

Counsel for appellant suggest an analogy between the case at bar and *Brendle v. Hudson*, 146 Kan. 924, 73 P. 2d 1013. There is no discernible analogy. Another case cited by appellant is *Triplett v. Farmers Union Coöp. Co.*, 120 Kan. 725, 244 Pac. 861. In this latter case what slight analogy there is to the case at bar is favorable to Weissbeck. There Triplett made a contract to purchase the land. He hired Smith to plant 66 acres of the land to wheat. Triplett furnished the seed and paid Smith for the plowing, harrowing and drilling. Smith occupied the land and withheld possession, and an action was begun to obtain possession and to eject Smith. While that action was pending Smith harvested the wheat and sold it to the Farmers Union Coöperative Company and received payment

therefor.   Triplett sued the purchaser for the value of the wheat and recovered.   Necessarily the true ownership of the crop was drawn in question, and neither the trial court nor this court had any difficulty in deciding the case in favor of the man who furnished the seed, paid for the plowing, harrowing and planting, and was only prevented from harvesting it by the wrongdoer who threatened to kill him if he came on the land.   In the Triplett case, our early case of *Rathbone v. Boyd*, 30 Kan. 485, 2 Pac. 664, is reviewed.   We agree with the trial court that the rule it stated is pertinent and applicable to the case now before us—if plaintiff's deprivation of the occupancy of the land could be ascribed to some deliberate wrongdoing on the part of Weissbeck, which does not appear.

In our early case of *Duncan v. Yordy*, 27 Kan. 348, it was held:

"A plaintiff in the actual and peaceable possession of real estate may be entitled to recover for injuries to his growing crops, although not the owner of the premises, and not entitled to the right of possession thereof."

In 25 C. J. S. 8, it is said:

"Where a mere intruder on land plants crops thereon, such crops, as long as they remain unsevered, are the property of the owner of the land. . . . On the other hand, one who sows, cultivates, and harvests a crop on the land of another is entitled to the crop as against the owner of the land, whether he came to the possession of the land lawfully or not, provided he remains in possession until the crop is harvested."

See, also, *Holmes v. Holt*, 93 Kan. 7, 142 Pac. 369; and 15 Am. Jur. 222.

The judgment is affirmed.