In the Matter of PANAMA–WILLIAMS
CORPORATION, Debtor.

No. 63–H–6.

United States District Court
S. D. Texas,
Houston Division.

Dec. 3, 1964.

**730**

---

Minter & Graham, Sam S. Minter, Houston, Tex., for debtor.

Sanders, McElroy & Whitten, David H. Sanders, Tulsa, Okl., for petitioner.

Arthur L. Moller, Houston, Tex., referee in bankruptcy.

INGRAHAM, District Judge.

This cause is now before the court on a petition to review the findings of fact, conclusions of law, turnover order and judgment entered by the Referee in Bankruptcy on May 21, 1964.

The matter began with the filing of a petition for arrangement under Chapter XI of the Bankruptcy Act. On the date of filing, January 31, 1963, an order was entered by the Referee in Bankruptcy authorizing the debtor to remain in possession and to continue its business under orders of the court. Thereafter, the Debtor in Possession (hereinafter referred to as "Respondent") filed an application for Turnover Order against one Pride Morey Lewis (hereinafter referred to as "Petitioner"), a former employee of Respondent and a resident of Oklahoma. This Turnover Order was for certain equipment and funds in Petitioner's possession but allegedly owned by the Respondent. A show cause order was entered, and a copy of the order along with a copy of the turnover application was served on Petitioner by the United States Marshal for the Northern District of Oklahoma.

Prior to the hearing on the show cause order, Petitioner surrendered to Respondent all of the equipment listed in the application for the turnover order, and filed a written accounting, with supporting exhibits, purporting to show that he did not have in his possession any funds belonging to Respondent. Also prior to the hearing Petitioner filed a response in which he set out a claim to $5,769.01, monies allegedly due and owing by Respondent and to Petitioner.

The hearing was held on September 6, 1963. The Petitioner personally appeared and was represented by counsel. Immediately after the convening of the hearing, and prior to the offer of any evidence, it was stated that the basis and purpose of the hearing was to determine the issue of whether Petitioner had accounted and paid to Respondent all of its funds in his possession. Neither party objected, and the hearing proceeded on that basis. Neither Petitioner nor his attorney, at any time prior to or during the hearing, interposed any objection to the jurisdiction of the Referee to determine and adjudicate the question of whether the Petitioner had either accounted for or paid to the Respondent all of the Respondent's funds which had been in Petitioner's possession.

It was determined by the Referee that Petitioner was indebted to the Respondent in the sum of $17,527.91 and that Petitioner had in his possession at that time funds belonging to the Respondent in the amount of $1,100. It was accordingly ordered, on May 21, 1964, that Petitioner turn over to Respondent the amount of $1,100 and that an affirmative judgment be entered in the amount of $16,427.91 against Petitioner and in favor of Respondent, with interest to accrue at 6% from the date of entry. The petition for review of the order was mailed on May 28, 1964, and was received by the Referee on May 29, 1964. It was not accompanied by the requisite filing fee, however, and was therefore not officially filed until June 4, 1964, when the fee was

paid. Respondent urges that the petition for review was not timely filed and does not, therefore, satisfy the requirements of Section 39, sub. c of the Bankruptcy Act. These contentions, both certified by the Referee, should be disposed of first.

■ These questions actually present but a single issue: Is the failure to comply literally with the provisions of Section 39, sub. c of the Bankruptcy Act, in this instance, fatal to the petition for review?[1] A person is given ten days from the date of entry of a final order in which to petition for review. An extension may be granted if it is requested within that ten day period. This ten day period is significant, for although Petitioner mailed a copy of his petition and it was received by the Referee within the ten day period, there was a failure to pay the requisite filing fee until after the ten day period had run. Prior to 1960 the law was that the ten day period limited review as a matter of right, but did not limit the discretion of the court to entertain a petition after the expiration of that period. See, Pfister v. Northern Illinois Finance Corp., 317 U.S. 144, 153, 63 S.Ct. 133, 87 L.Ed. 146 (1942). In 1960, however, Congress specifically addressed itself to this ruling and amended the statute so as to make it clear that a petition for review must be filed within the prescribed ten day period or within such extended time as the court may allow upon petition for extension itself filed within such ten day period. S.Rep.No.1689, 86th Cong., 2d Sess. 602 (1960), U. S. Code Congressional and Administrative News 1960, p. 3194. This would seem to indicate that the late filing in the instant case was fatal. However, the petition was received by the Referee well within the ten day period, and the petitioner was not notified until after the expiration of the ten days that the petition had not been filed due to the failure to include the requisite filing fee. A more prompt notification could have resulted in the timely submission of the fee. Under such circumstances it does not thwart the expressed Congressional policy of establishing certainty in these review cases to hold that the petition was timely filed. It was clear that Petitioner intended to petition for review within the proper time and Respondent is in no way surprised or prejudiced by a ruling that the effective date of filing was the date when the petition was received rather than the date of payment of the filing fee. It should be emphasized, however, that this ruling is due to the particular circumstances of this case and is not an invitation to ignore filing fee requirements in the future.

That brings the court to the allegations of the petition for review. The petition is a lengthy, vague, and repetitive document, at best, with no supporting brief of authorities, and no amplification of legal theory. Upon failure of the Petitioner to file supporting and clarifying briefs, the court directed a letter to counselor for Petitioner, advising that he would be given an additional thirty days in which to file briefs and asking that he direct himself to specific cases with which the court was concerned. No briefs on behalf of Petitioner have been filed. The allegations range from specific challenges of the jurisdiction of the Bankruptcy Court to broad,

---

1. 11 U.S.C.A. § 67, sub. c: "(c) [a] person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court upon petition filed within such ten-day period may for cause shown allow, file with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. Such petition shall set forth the order complained of and the alleged errors in respect thereto. Unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the referee shall become final. Upon application of any party in interest, the execution or enforcement of the order complained of may be suspended by the court upon such terms as will protect the rights of all parties in interest."

unexplained statements of conclusions.[2] But the essence of the petition may be distilled to two general allegations: (1) There is not sufficient evidence to support the order and judgment, and (2) The Bankruptcy Court did not have jurisdiction to enter the order and judgment. These are the remaining two questions certified by the Referee.

 On petition for review by a district court the Referee's findings and orders should be upheld unless deemed clearly erroneous. Such a determination can be made when the findings are unsupported by substantial evidence, contrary to the clear weight of evidence, or induced by an erroneous view of the law. This is well established by prior decisions of this court. E. g., Re Basic G. Industries, Inc., 173 F.Supp. 903 (S.D.Tex.1959). In the opinion of the court there has been no such showing by the Petitioner in this case. The findings are substantially supported by the evidence and are not "clearly erroneous". But even though the findings are substantiated, if the Referee lacked the jurisdiction to enter them, they must be void. And this is the issue which has been most extensively urged by Petitioner—whether the Referee had jurisdiction to enter the order and judgment.

 Jurisdiction over the person of the Petitioner is attacked. The service of process on Petitioner beyond the territorial jurisdiction of the court is felt to be without legal basis. Respondent, on the other hand, urges that Section 311 of the Bankruptcy Act, 11 U.S.C.A. § 711, by providing that the Bankruptcy Court has "exclusive jurisdiction of the debtor and his property, wherever located", has, by necessity, given to the court in a Chapter XI case the power to send its process throughout the United States. That position is correct, as far as it goes. Section 311, however, should

not be regarded as giving the Bankruptcy Court general, plenary, nationwide jurisdiction at law and in equity over all questions incident to the collection of the claims of the debtor against third persons. The extraterritorial service of process should only extend to those cases which involve the debtor or the property of the debtor. Where the litigation does not involve the property of the debtor, but is merely *in personam*, and not directed against the debtor, there is no jurisdiction in the Bankruptcy Court in a Chapter XI case to issue its process outside the district, except where authorized by Chapters I to VII. See, generally, 8 Collier, Bankruptcy, Para. 3.03(4) (14th Ed. 1963). It is clear that the process served initially in the instant litigation involved the property of the "debtor". That was to be the purpose of the turnover order. A much closer question would be presented if the only "property" under consideration initially had been the cash which was the subject of the ultimate turnover order. But such was not the case, and the failure of the Petitioner to enter any objection to the Referee's actions once they became questionable is equivalent to consent on the part of Petitioner. The net result is that Petitioner was properly brought before the court in the first instance, and failed to preserve any further objection to jurisdiction once the nature of the hearing changed to what might be considered *"in personam"*.

 Petitioner further attacks the jurisdiction of the Referee to enter an affirmative judgment upon a summary proceeding. This argument, too, is defeated by Petitioner's consent. The argument is that the Referee has no jurisdiction to hear and adjudicate in a *summary proceeding* a controversy between adverse claimants. This position is correct, but the parties have only a

---

2. Two allegations, in particular, which the court feels lack specificity are: "The findings of fact, order and judgment of the referee are void and unenforceable in that said proceedings were not commenced by the proper pleadings," and "The findings of fact, order and judgment of referee are an abuse of discretion and constitute a questionable experiment in coercion which does not lie within the authority or powers of the bankruptcy court."

*procedural* right to have the issues determined in a plenary action and may waive this right or acquiesce in a summary method of procedure. Consent to the summary proceeding may be (1) express, (2) by waiver through failure to raise the proper objection, or (3) implied from any act indicating a willingness on the part of the party that his claim or interest be determined summarily. 2 Collier, Bankruptcy, Para. 23.08(1) (14th Ed. 1963). The action of the Petitioner in the instant case brings him within two out of the three categories. There was no objection to the summary jurisdiction of the Referee until after the entry of the final order. An objection at that point is too late to preserve Petitioner's right to challenge jurisdiction. He has impliedly consented to the action of the court. The cases are legion in support of this proposition. But the clearest evidence is evinced by the Bankruptcy Act itself. In 1952 Congress amended Sec. 2, sub. a(7) of the Act, 11 U.S.C.A. § 11, sub. a(7), to add the following provision:

> " * * * and where in a controversy arising in a proceeding under this Act an adverse party does not interpose objection to the summary jurisdiction of the court of bankruptcy, by answer or motion filed before the expiration of the time prescribed by law or rule of court or fixed or extended by order of court for the filing of an answer to the petition, motion or other pleading to which he is adverse, he shall be deemed to have consented to such jurisdiction;"

The purpose of the amendment was to overcome the rule established by the Supreme Court in Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944), that the objection to jurisdiction could be entered at any time prior to the entry of a final order in the proceeding. But even under the more liberal rule of Cline v. Kaplan, Petitioner failed to timely assert his objection in the instant case. If this were not sufficient, the consent of the Petitioner could be implied from his filing a written accounting with the Referee and filing a response in which he set out an affirmative claim for monies allegedly due and owing by Respondent to Petitioner. In a summary proceeding a defendant who seeks affirmative relief by a cross-motion or other appropriate pleading consents to the court's summary jurisdiction. Cf. In re Engineers Oil Properties Corp., 72 F.Supp. 989 (S.D. N.Y.1947).

In view of the foregoing; the court holds that the petition for review filed by Pride Morey Lewis does not allege any matter or error which should cause the Referee's order in this matter to be modified or set aside. The clerk will notify counsel to draft and submit judgment accordingly.