197 Kan. 351 (1966)
416 P.2d 711
In re The Trusteeship of the Will of Thomas H. Bowlus, Deceased.
SCHOOL DISTRICT No. 10, ALLEN COUNTY, KANSAS, Appellant,
v.
ALLEN COUNTY STATE BANK, Trustee Under the Will of Thomas H. Bowlus, Deceased, Appellee.
No. 44,537
Supreme Court of Kansas.
Opinion filed July 14, 1966.
Stanley E. Toland, of Iola, argued the cause, and Frank W. Thompson, of Iola, was with him on the briefs for the appellant.
Howard M. Immel, of Iola, argued the cause and was on the brief for the appellee.
Clyde Hill, of Yates Center, was on the brief pro se, as amicus curiae.
Mitchell H. Bushey and J.D. Conderman, both of Iola, and Robert F. Stadler, of Humboldt, were on the brief for the intervenors, Charles H. Apt, et al.
The opinion of the court was delivered by
FONTRON, J.:
The appellant, School District No. 10, Allen County, Kansas, has appealed from three orders entered by the District Court of Allen County. The first order of which complaint is made directed the District School Board or Board of Education to report annually concerning its administration of property left in trust under the will of Thomas H. Bowlus; the second order contained various directives to the School Board, and the third retaxed specific costs to the School District. In this opinion, we will refer to School District *352 No. 10 as District, to the School Board or Board of Education as Board, and to the Allen County State Bank as Trustee or Bank.
Since the time this appeal was argued, a motion was filed to substitute Unified School District No. 257, Allen County, Kansas, in place of School District No. 10. The motion is resisted by the Bank and by the Allen County Community Junior College, which claims to be a successor in part to District 10. Because the motions raise questions which properly should be presented to the trial court in the first instance, we do not pass thereon but consider the appeal as presented to us.
Certain background material is essential to an understanding of the issues appearing in this case. Mr. Bowlus, a substantial and public-spirited resident of Iola, Kansas, who was possessed of an interest in things cultural, died on December 17, 1960, leaving a will in which he devised his residuary estate in trust to the Allen County State Bank. The will directed the Trustee to raze the testator's home as soon as the personal property therein was divided and thereupon the real estate should become the property of the District for a site on which to erect, from trust funds, a Fine Arts and Cultural Center (hereafter called the Center) "for the use and purposes and for the benefit of the children of the City of Iola, or as are enrolled in the Iola School System and the citizens of the area," provided the Board made known its acceptance of the benefits of the trust within six months from the date of Mr. Bowlus' death.
The will further provided that construction of the Center be commenced on the property within two (2) years from the testator's death; that when the Center was finished, a lot lying across the street be conveyed by the Trustee to the District for use by it in connection with the Center; and that upon completion of the Center, the Trustee should hold the residue of the trust property for a period of fifteen (15) years, expending from the revenue "such sums as in the opinion of the School Board, with the concurrence of the Trustee, are necessary for the maintenance, repair, remodeling, rebuilding, furnishing, equipping or enlarging of such building."
At the end of the fifteen (15) year period, the Trustee was directed to sell the assets then remaining in the estate and to deliver the entire cash balance in its hands to the Board of Education of School District No. 10, or such successor district as encompassed the major part of Iola, "to be expended as said Board may see fit, by official action, in the perpetuation of cultural education within *353 and of the school district." The will further provided that should the District fail to accept under the will, or in the event the premises were used for purposes other than a Fine Arts and Cultural Center, the trust as to said District should fail and the trust proceeds should then be used in part for a shelter house for the citizens of Iola and the balance paid over to the Kansas University Endowment Association to establish a Bowlus Scholarship Fund.
Other provisions of the Bowlus will, in our opinion, are not essential to the disposition which must be made of this appeal and will not be detailed at this time.
Within six months after Mr. Bowlus died, the Board notified the Trustee of its acceptance of the benefits under the trust, and on October 25, 1962, on the petition of the District, the trust estate was transferred to the District Court of Allen County, Kansas, under the provisions of K.S.A. 59-2402d.
The Fine Arts and Cultural Center was substantially completed and ready for use in the fall of 1964. We gather, from all accounts, that the structure was and continues to be a noble edifice, fit to grace and serve the finest of communities, and a facility to quicken the pulse of every true student and lover of the Arts. The Center was dedicated with appropriate ceremonies on September 27, 1964, and appears to have been in continuous use since that auspicious occasion.
On August 19, 1964, the District Court, for the benefit of the Trustee and the Board, construed that section of the Bowlus will which provided for the expenditure of such trust revenue as might be needed to maintain, equip, repair, remodel, furnish and enlarge the building. In its decision, the court pinpointed the items which came within those categories and designated the purposes for which trust funds could be used in maintaining the Center. The establishment of a revolving fund was also authorized by the court at this time.
No further judicial action appears of record until February 1, 1965, at which time the court, on its own initiative, entered a "Rule and Order for Future Hearings." This order provided that the Trustee file annual accounts commencing March 31, 1965, and that the Board make yearly reports beginning April 1, 1965, respecting the uses to which the Center was being devoted. Language employed by the court in this order provides the first indication, so far as we can ascertain from the record, that discord was developing over the Board's operation of the Center.
*354 In response to the court's order, the Board, on April 8, 1965, file a comprehensive report purporting to answer the specific inquiries posed by the court. On May 4, 1965, the Honorable Clyde Hill, of Yates Center, was appointed as amicus curiae to assist the court and a hearing on the Board's report was commenced on May 19. Both the court and the Board called witnesses, in whose examination amicus curiae participated.
When the hearing had been concluded, the trial court, on June 30, 1965, filed an order entitled "Findings and Directions" to which the District duly objected. We deem it unnecessary to summarize the several findings, observations and comments with which the court accompanied its order. For present purposes, it is sufficient to say the following directives were issued: (1) That the Board employ a qualified director of the Center, not otherwise employed in the school system (thus requiring the discharge of the present coordinator who had been connected with the Fine Arts department of the Iola schools for some twenty years); (2) that the Board designate the director's duties (in this connection, the court pointed out twelve duties which should be expected of the director); (3) that an advisory council be established, representing various cultural and educational interests of the community, to make recommendations to the director; (4) that income be accumulated and not added to the capital account of the trust except on court order; (5) that the Board sponsor productions for which other sponsors are not obtainable and, if necessary, to pay the cost thereof to the extent trust income is available; and (6) that no fees be charged for use of the Center, except to organizations not primarily existing to promote the Arts, and then only for programs to which the public was not expressly invited.
A short time later, an additional order was entered by the court, bearing date of July 26, 1965, taxing to the Board the costs of preparing the reporter's transcript, an expense which originally had been charged against funds of the trust estate.
The Board, acting on behalf of the District, has appealed from the last three orders, i.e., the February 1 order requiring annual reports by the Board, the June 30 order giving directions to the Board, and the order of July 26, 1965, retaxing costs to the Board.
On September 21, 1965, thirteen Iola citizens, all being members of the Allen County Bar, filed their motion to intervene in this case on behalf of themselves and other citizens of the city. *355 An answer to this motion was filed by the Board praying that intervention be denied.
Thus matters rested until October 15, 1965, when the District Court in a written Memorandum Decision vacated and set aside, in their entirety, the findings and order of June 30, 1965, which directed certain action by the Board, and the order of July 26, 1965, retaxing costs. In the same Memorandum, the court modified its February 1 order, by deleting that portion which required the Board to make annual reports in the future. The court also, at this time, permitted the Iola lawyers to intervene for purposes of the appeal.
On January 14, 1966, the intervenors and the Bank (which has been designated as appellee in these appellate proceedings) jointly filed a motion to dismiss the Board's appeal, and briefs were filed in support of and in opposition to that motion. The Bank's motion, which contained several grounds, was overruled but leave was given to renew the same when the case was presented on its merits. On oral argument, the motion to dismiss was renewed and thus has first claim to our attention.
Under the particular circumstances shown to exist in this case, we have concluded, for reasons hereafter discussed, that the motion to dismiss the appeal must be sustained.
The position taken by the Board on appeal is essentially twofold. First, the Board contends the District is not a trustee under the Bowlus will, but is simply the donee of a testamentary gift and, hence, is not subject to judicial control and direction in its operation and use of the Center. The corollary of this contention is that the district court acted without jurisdiction in issuing its directives of February 1 and June 30, 1965. Second, the Board maintains that, assuming the District is subject as a trustee to the supervisory jurisdiction of the court, the court abused its discretion in issuing its directives, especially those contained in its June 30 order, thereby substituting its judgment for that of the Board, and further, that the court's actions are not supported by evidence.
The main thrust of the Board's argument is directed essentially toward its first contention, i.e., that the District is not a trustee under the Bowlus will, but the donee of an absolute gift. The Board's position appears to be fairly set forth in the response which it made to appellee's motion to dismiss, wherein it is said:
"The basic issue presented in this appeal is whether the District Court acting under K.S.A. 59-2402d has supervisory jurisdiction with respect to the administration *356 of this Fine Arts and Cultural Center facility and its uses. If the testator's gift is an absolute gift to the appellant school district with limitation on use to the purposes stated in the Will, then the District Court has no supervisory jurisdiction whatsoever...."
A great deal of emphasis has been placed on this "basic issue" both in the brief filed by the Board and in its oral argument. However, the difficulty with the Board's position is this: That particular "basic issue" was not raised prior to this appeal. The Board made no claim in the trial court that the District was simply the recipient of an outright gift from the testator. The Board's failure to advance this contention before the trial court is made clear by the remarks of its counsel made at the conclusion of the hearing which resulted in the June 30 order. At that time, counsel spoke only of the discretionary powers possessed by the Board, and referred not at all to the contention now being advanced that the trial court lacked supervisory authority over the Board.
It is the long and well-established rule of this jurisdiction that this court will not consider on appeal issues or questions which were not presented to the trial court. In Green v. Kensinger, 193 Kan. 33, 392 P.2d 122, we held:
"On appeal, a litigant may not change the theory of his case from that on which it was presented to the trial court, nor present matters not brought to the trial court's attention." (Syl. ¶ 4.)
See, also, cases collected in 1 Hatcher's Digest, Revised Edition, Appeal and Error, § 304, and 2 West's Kansas Digest, Appeal and Error, §§ 169, 171.
The rule that a question may not be submitted for the first time on appeal is a salutary one which finds its justification in certain basic considerations. A party may not be permitted to sit idly by and then complain of an adverse judgment which he might have prevented by the timely presentation of issues not considered by the court. The obvious purpose of requiring the submission of issues first to the trial court is to apprise that court accurately of the position taken by a litigant to the end that the court, being fully advised, may arrive at a just decision or, when shown to be in error, to correct its rulings. A further purpose to be served is to permit the opposing side to nullify or overcome a defect, if possible. It is only through the consistent application of the foregoing rule that our appellate function may be exercised expeditiously and with fairness to litigants.
The same considerations which underlie the rule of appellate *357 procedure just discussed appear to us as being applicable to our examination and final determination of this appeal as a whole. As we have previously noted, the appeal in this case was originally taken from three orders: (1) The order of February 1, 1965, requiring annual reports from the Board; (2) the order of June 30, 1965, which contained certain orders and directions to the Board; and (3) the order of July 26, 1965, taxing costs of the stenographic transcript to the Board. The third order has since been set aside and we presume the appeal from it, at least, is of no further concern and may be considered moot.
We believe that neither of the first two orders, being those of February 1 and June 30, 1965, respectively, can be said to have resulted from adversary proceedings in the true sense of that term. Both orders were, in our opinion, ex parte in character. Ex parte proceedings have been said to be proceedings had at the instance or for the benefit of one side, or of one party, only, without notice to or contest by any person adversely affected, or in the absence of opposing parties. (State v. Cox, 87 Ohio St. 313, 101 N.E. 135; Hoff v. District Court, 79 Nev. 108, 378 P.2d 977; Black's Law Dictionary, 4th Ed.)
In our judgment, the proceedings which gave rise to both of the foregoing orders fall within the reach of the definition. The order of February 1, providing for future reports, was issued on the court's own motion without any hearing. It is true the second order, that of June 30, was entered after a hearing at which both the Court and Board produced witnesses. However, no notice of the hearing is shown to have been given members of the interested public, nor was any pleading ever filed in opposition to the Board's report. The hearing itself was, obviously, not of a controversial or adversary character. Whatever representation the public may be said to have had was only through the medium of amicus curiae  not by counsel acting in an adversary capacity.
It was not until thirteen Iola lawyers attempted to intervene in the action that an effective adversary representation was tendered on behalf of the public and its interests. The very tone of the court's Memorandum and Findings of June 30, coupled with the language in which its directives were couched, clearly reveals that the "inquiry" was held on the court's own initiative in the exercise of its "supervisory jurisdiction," and not as an adversary proceeding.
While we have had no previous occasion to pass upon the point, *358 it is generally held that an ex parte order is not appealable. In 4 C.J.S., Appeal and Error, § 157, p. 528, the rule is stated:
"It is generally held that no appeal lies from an ex parte judgment or order, the proper remedy being to apply to the court to have such judgment or order set aside and then, if the application is denied, to take an appeal from the denial....
"As a rule, an appeal will not lie from an order setting aside an ex parte order, as it is not final; but, where a motion is duly made to set aside an ex parte order and is denied, an appeal will then lie."
The reasoning which undergirds the rule finds lucid expression in 4 Am.Jur.2d, Appeal and Error, § 120, p. 636, where it is said:
"The general rule seems to be that an ex parte order is not a final order, and therefore ordinarily not directly appealable, the view ordinarily taken being that the party aggrieved by such an order must first move to vacate or set aside the order and may then appeal from the decision on the motion. This refusal to permit direct appeals is based upon the theory that a trial court which may have acted erroneously on a one-sided application will proceed and correct its error if an adverse party is heard, as well as upon the theory that to allow an appeal from an ex parte order would violate the fundamental principle of appellate procedure that the appellate court should only review questions already considered and determined by the lower court."
We believe the reasons given in support of the rule have special significance when the rule is applied to circumstances such as we find here. After the appeal in this case had been perfected, the trial court vacated and set aside the order of June 30, entirely, on the ground, among others, that its directives may have been premature, and also modified its order of February 1 by eliminating therefrom the requirement of future reports. This action by the court has given rise to the claim by appellee that the Board's charges of abuse of discretion and lack of evidence have become moot. We need not now determine the issue of mootness, in view of our decision on other grounds, but the trial court's action is vacating one order and modifying another supplies force to the rule that a trial court should be accorded an opportunity to correct or amend an ex parte order prior to its being appealed. Appeal may thereafter be perfected if the court refuses to take corrective action.
Had such an opportunity been given the District Court of Allen County, much of the relief now sought by the Board on appeal might have been secured at the trial level. We hold that, under the circumstances obtaining in this case, the trial court should have been given the chance to rectify whatever mistakes the Board thought had been made. The Board's explanation that there appeared *359 no reasonable expectation the court might change its mind provides no excuse for its inaction.
Other reasons have been advanced for dismissing the appeal but we find no justification for pursuing them now. For reasons already assigned, this appeal must be dismissed and the case returned to its place of origin where we hope it may receive the calm, reflective and objective consideration which should be its due. While we have no desire to pontificate, we trust it will not be amiss to observe that the community of Iola has been blessed by the generosity of a cultured and charitable benefactor whose objective was to promote beauty and enjoyment among its people, not acrimony and resentment. We therefore express the hope that problems created by the magnanimity of Mr. Bowlus may be approached by everyone concerned in the spirit of graciousness with which his gift was bestowed.
For reasons which we have heretofore discussed, the appeal is dismissed.