No. 47,087

EDWARD MATER and PEARL MATER, and WILLIAM C. BARNETT and LILLIAN K. BARNETT, *Appellees,* v. GALEN H. BOESE and MARY BOESE, His Wife, *Appellants.*

(518 P. 2d 482)

712

filed January 26, 1974.

*Edwin P. Carpenter,* of Topeka, argued the cause, and *Lee Turner,* of Turner, Chartered, of Great Bend, and *Raymond L. Dahlberg,* of the same firm, were on the brief for the appellants.

*Jack Dalton,* of Mangan, Dalton & Trenkle, of Dodge City, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from consolidated actions by Edward and Pearl Mater, plaintiffs-appellees, and William C. and Lillian K. Barnett, plaintiffs-appellees, against Galen H. Boese and Mary Boese, defendants-appellants, to determine title to the proceeds from wheat harvested and sold in Ness County, Kansas. The defendants have duly perfected an appeal from the district court's judgment sustaining the plaintiffs' motions for summary judgment.

At a pre-trial conference on April 6, 1972, it was stated by counsel for the respective parties and determined by the court that there appeared to be no material dispute as to the facts in the two consolidated cases (identical for purposes of this appeal) and that the matter could be determined upon motion for summary judgment to be submitted by counsel for the respective parties.

The Maters and the Barnetts each owned a quarter section of realty located in Ness County, Kansas. On January 23, 1970, they entered into separate contracts providing for the installment sale of their land to the appellants, Galen Boese and his wife, Mary Boese. The only features of those contracts which need be mentioned are that the appellants were to receive the entire growing crop, or landlord's share, for the entire year of 1970, and there was an express proscription against assignment without the written consent of the appellees.

Later, on April 29, 1970, the appellants, executed a written contract which purported to assign their interests in the realty contracts to one Loren Schartz. The purported assignment was executed without obtaining oral or written consent from any of the appellees.

Subsequently, on July 14, 1970, Galen Boese was adjudicated a

bankrupt in the United States District Court for the District of Kansas, and a trustee for his estate was appointed. Furthermore, on December 8, 1970, the United States District Court held a hearing on a show cause order and determined that the purported assignment of the appellants to Loren Schartz in the realty contracts "is hereby set aside and held for nought."

Thereafter, on April 9, 1971, in the United States District Court, a hearing was held upon an order directing Mary Ann Boese to show cause why an order should not be entered finding that she has no interest or equity in the realty contracts. Galen Boese's bankruptcy trustee, who petitioned for the show cause order, appeared at the hearing, but Mary Ann Boese neither appeared in person nor filed any pleadings, even though proper notice had been given. At the hearing the court ruled as follows: ". . . [A]fter considering the file and the evidence adduced finds that the respondent Mary Ann Boese is subject to the jurisdiction of this court and that the said respondent has no interest or equity in and to . . ." the two realty contracts.

*On May 12, 1971, the United States District Court made an order confirming the trustee's sale of the two realty contracts back to their respective owners, the Maters and the Barnetts.* On the same day quitclaim deeds which were subsequently approved by the referee in bankruptcy, were executed and delivered to the appellees.

At the same time as the proceedings were being conducted in the bankruptcy court, there was wheat growing upon both of the quarter sections involved in this controversy. In June of 1971 Galen Boese harvested all of the wheat and stored it at the Brownell Grain Co., Inc.

It was in August of 1971 that the appellees filed their actions in the district court of Ness County, Kansas, against the Boeses and the Brownell Grain Co., Inc., claiming all right, title and interest to the harvested wheat. The appellants responded with timely answers and counterclaims, to which the appellees replied. On January 20, 1972, upon a motion filed by Brownell Grain Co., Inc., the court ordered the wheat in dispute to be sold and the proceeds to be held by the court until the controversy was determined. Pursuant to the court's order the wheat was sold, and the sum of $2,058.60 was deposited with the clerk of the court in the Barnett case and $1,981.06 similarly deposited in the Mater case.

After the issues were joined, the appellees served a request for admission of various facts upon appellants pursuant to K. S. A. 60-236 (now K. S. A. 1973 Supp. 60-236). The appellants did not respond in any manner to the request. Each of the admissions requested must therefore be deemed admitted.

On May 2, 1972, subsequent to the pre-trial conference, the appellees filed motions for summary judgment. Various exhibits were filed with the motions, including the installment sales contracts, and the pertinent orders from the bankruptcy court, supporting affidavits and briefs. At this time the hearing on the motions for summary judgment was noticed for hearing on June 7, 1972, the next regular motion day of the district court in Ness County. The motions were supplemented on June 6 by including various records from the Federal Crop Insurance Corporation office in Ness City, Kansas, and the Ness County Agricultural Stabilization and Conservation Service office, a part of the United States Department of Agriculture.

The appellants did not respond to appellees' motions nor did they make any motions of their own.

On May 31, 1972, the appellants' attorneys wrote the court requesting the judge of the district court of Ness County for a rescheduling of the hearing for a date more mutually convenient to counsel of all parties concerned.

On June 12, 1972, appellants' counsel telephoned the court and ascertained the argument had not been rescheduled, and the attorneys for the appellees were promptly notified.

An immediate response was sent by letter from appellees' counsel to the appellants' counsel dated June 15, 1972, in which they acknowledged their prior willingness to pass the hearing on the June motion day (June 7) and renoticed the hearing on the motions for July 12, 1972.

On the very same day (June 15) the district judge informed the parties he had decided the cases on the motions for summary judgment called before the court on June 7, 1972. He sustained the appellees' motions for summary judgment and entered judgment for the appellees for the proceeds from the sale of the wheat held by the clerk of the district court in each case. In doing so the court stated:

"This matter was then called to the Court's attention by the Clerk of the District Court of Ness County on its regular motion day, June 7, 1972. This

Court then carefully examined the files and attempted to consider everything found therein necessary to make a ruling on the foregoing motions.

"There has been no responsive pleadings to the motions for summary judgment, or counter-affidavits filed by the defendants. The only thing the defendants have filed that could be construed as a counter-affidavit is a counterclaim made in the counterclaim of the defendants."

In addition the court adopted the findings of fact set forth in appellees' motions. After the parties were notified of the court's judgment, the appellants' counsel advised appellees' counsel over the telephone that he intended to appeal the case. On June 29 appellees' counsel wrote opposing counsel as follows:

\* \* \* \* \*

"If your primary complaint is that you were not given an opportunity to be heard on the motions, I would have no objections to the motions being argued to the court and the court's judgment on the motions held in abeyance until he has had an opportunity to hear your arguments and mine. I am sending a copy of this letter to the court and if you would like to take it up with Judge Wildgen, please feel free to do so."

With no response forthcoming from the appellants' counsel, the journal entry of judgment was finally entered on July 12, 1972.

The appellants first contend the district court erred in rendering a summary judgment before the appellants were given an opportunity to present arguments on the motion for summary judgment at a duly noticed hearing.

At a pre-trial conference on April 6, 1972, counsel for the respective parties conceded there was no substantial dispute of material fact, and that the matter could be determined upon a motion for summary judgment to be submitted by counsel for both parties. Thereafter the appellees prepared their motion for summary judgment with supporting documents, as heretofore related, and forwarded a copy to the court and counsel on April 25, 1972. The original was received and filed by the clerk of the court a week later. No request for oral argument was filed with the motion, and the record does not indicate any request for oral argument was ever filed by either party as permitted by Rule No. 114 of this court (K. S. A. 60-2702).

Rule No. 114 provides that every motion made in writing which seeks a ruling of some part of the merits of the action (this includes a motion for summary judgment), shall be accompanied by a short memorandum setting forth (a) any reasons for the motion not fully stated in the motion itself, and (b) the citation, without extended

elaboration, of any authorities which it is necessary for the judge to consider in ruling upon the motion. The rule further provides:

". . . If the motion also contains a request for oral argument, or if within five days of the service of the motion an adverse party serves and files a request for oral argument, no ruling shall be made on the motion without opportunity being given to counsel to present such arguments. In either event, an adverse party may at his option serve and file a similar memorandum in opposition to the motion. In the absence of any request by either party for oral argument in accordance with this Rule, the judge may rule upon the motion forthwith and communicate the ruling to the parties in accordance with Rule No. 115."

In addition thereto, K. S. A. 60-256 (c), which governs a motion for summary judgment, provides in part:

"(c) *Motion and proceeding thereon.* The motion shall be served at least ten (10) days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."

The first response of any type from the appellants to the motion for summary judgment came by letter from their counsel to the court on May 31, 1972. This letter came more than four weeks after the motion for summary judgment was served and filed. By this time the period within which a request for oral argument on the motion could be filed by the appellants had expired.

The date for which the motion was noticed for hearing was the regular motion day of the Ness County District Court, June 7, 1972. Therefore, unless the appellants' efforts prior to June 7, 1972, were successful in procuring a continuance on the hearing of the motion, they were required to file, prior to the day of the hearing, opposing affidavits pursuant to 60-256 (c), *supra,* and a memorandum in opposition to the motion pursuant to Rule No. 114, if they desired to do so. There is nothing in the record disclosing that the June 7 setting was continued by the district judge. Agreement by counsel for the respective parties to seek a more suitable date for hearing the motion did not affect the setting of the motion for hearing and place the matter in limbo, or take the matter from the control of the district judge.

It has been held that a district judge has inherent power to enter a summary judgment on his own motion to dispose of litigation, when there remains no genuine issue as to any material

fact, and that one of the parties is entitled to judgment as a matter of law. In doing so a party against whom a summary judgment is being considered must be given the benefit of all reasonable inferences that may be drawn from the facts under consideration. (*Green v. Kaesler-Allen Lumber Co.*, 197 Kan. 788, 420 P. 2d 1019; and *Darby v. Keeran*, 211 Kan. 133, 136, 505 P. 2d 710.)

By letter dated June 15, 1972, the district court announced its decision to counsel, with a request that counsel for the appellees prepare the necessary journal entry, circulate it and submit it to the court for signature.

Prior to preparation of the journal entry, counsel for the appellees wrote appellants' counsel indicating that the matter could be held in abeyance until an opportunity to orally argue the matter was afforded. But counsel for the appellants did not avail themselves of this new opportunity. Thus on July 12, 1972, judgment was entered upon the filing of the journal entry.

Under the foregoing circumstances it cannot be said counsel for the appellants were denied *an opportunity* to be heard. The trial judge at no time continued the hearing on the motion. The trial judge was present on June 7, 1972, his regular motion day, in the district court of Ness County when the matter was called to his attention by the clerk, and he gave the motion for summary judgment consideration.

The appellants argue under 60-256 (*c*), *supra,* that a hearing is contemplated in the course of a motion for summary judgment procedure, and that the mere filing of a motion for summary judgment is equivalent to a request for oral argument. It is to be noted the appellants did file a motion for summary judgment and the appellees are not complaining.

It was the purpose of Rule No. 114 to clarify the rights of the parties to oral argument concerning a motion for summary judgment, as here. If oral argument is desired, the request for oral argument must either be filed in writing with the motion for summary judgment, or by the adverse party within five days after service of the motion upon him.

On the record here presented all parties were given a *reasonable opportunity* to present all material they desired which wes pertinent to the motion for summary judgment and to present oral argument, had they desired to do so. The appellants' opportunity to present briefs supporting their position as to the law on the

motion for summary judgment was more than adequate. As a consequence, they cannot now be heard to complain.

The appellants next contend the district court erred in concluding the bankruptcy court had jurisdiction over Mary Ann Boese at the time the bankruptcy court's orders of December 8, 1970, April 9, 1971, and May 12, 1971, were entered.

On this point the appellants assert that the interest of Mary Ann Boese in the Ness County real estate was never subject to the summary jurisdiction of the bankruptcy court, and therefore the trustee's purported conveyance of her interest to the appellees was of no force and affect.

The summary jurisdiction of the bankruptcy court relative to this matter is found in the Bankruptcy Act, 11 U. S. C., § 11 (a) (7), which provides in part as follows:

"(a) The courts of the United States hereinbefore defined as courts of bankruptcy are created courts of bankruptcy and are invested, within their respective territorial limits as now established or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held, to—

"(7) Cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, except as herein otherwise provided, and determine and liquidate all inchoate or vested interests of the bankrupt's spouse in the property in any estate whenever, under the applicable laws of the State, creditors are empowered to compel such spouse to accept a money satisfaction for such interest; and where in a controversy arising in a proceeding under this title an adverse party does not interpose objection to the summary jurisdiction of the court of bankruptcy, by answer or motion filed before the expiration of the time prescribed by law or rule of court or fixed or extended by order of court for the filing of an answer to the petition, motion or other pleading to which he is adverse, he shall be deemed to have consented to such jurisdiction;"

The appellants argue the installment sales contract conveyed the real property in Ness County to "Galen and Mary Ann Boese, husband and wife." K. S. A. 58-501 is cited for the proposition that a grant or devise of real or personal property to a husband and wife shall create a tenancy in common. Thus it is argued an individual one-half interest was created in each of the appellants, and any subsequent judgment against the husband would create a lien only against his interest therein. (Citing, *Kirkpatrick v. Ault*, 177 Kan. 552, 280 P. 2d 637.)

The appellants argue the Bankruptcy Act gives the bankruptcy

court summary jurisdiction over a non-objecting, adverse party; but the only interest to which Mary Ann Boese might have an adverse claim would be her husband's undivided one-half interest, and under no circumstances can it be concluded that Mary Ann Boese constitutes an adverse claimant to something she owns free and clear and in her own individual right.

The foregoing argument of the appellants is fallacious in several respects.

The assertion that Mary Ann Boese's interest in the Ness County real estate was never subject to the summary jurisdiction of the bankruptcy court is made for the first time on appeal to this court. Pursuant to K. S. A. 60-236 admissions were elicited from the appellants that the United States District Court had jurisdiction over the parties and the subject matter at the time it entered the various orders, including its order of April 9, 1971, finding that Mary Ann Boese, wife of Galen H. Boese, had no interest in the real estate which is the subject of this action. The bankruptcy court's jurisdiction over Mary Ann Boese was never questioned through the pre-trial conference. Furthermore, for the first time on appeal, Mary Ann Boese's interest in the real property in question is being asserted as that of a co-tenant or an inchoate interest as the spouse of the bankrupt.

In the counterclaims filed with their answers the appellants clearly state their position as follows:

"2. Defendants state and allege that they have right, title and interest in and to two-thirds of the wheat referred to in plaintiffs' petition *by reason of their status as tenants* on said real estate." (Emphasis added.)

From the time the appellants filed their answer on September 29, 1971, to the pre-trial conference held on April 6, 1972, they never changed their position claiming their right to two-thirds of the wheat as tenants. The appellants' claim to the wheat as tenants stems from their purported assignment of the real estate contracts here in question to Loren Schartz. Yet the appellants admit the purported assignment of said real estate contracts dated January 23, 1970, was set aside and held for naught by the bankruptcy court on December 8, 1970.

The purported assignment of the real estate contracts to Schartz was dated April 29, 1970, less than two months prior to the filing of the Galen Boese petition in bankruptcy on June 26, 1970, and less than three months prior to the adjudication of Galen Boese as a bankrupt on July 14, 1970. Although the record does not

disclose the reason for the order, it is apparent the purported assignment was set aside as a voidable preference, and for the further reason that the appellants had no authority to assign the contracts without the written consent of the appellees.

The appellants, having taken the position they were tenants upon the real estate that is the subject of this action, and having admitted jurisdiction of the persons and subject matter in the United States District Court in bankruptcy, cannot now be permitted to change their theory or raise new issues not previously presented to the trial court, or inconsistent with the position they took before the trial court prior to appeal. (*Thompson v. Meyers*, 211 Kan. 26, 33, 505 P. 2d 680; *Evangelist v. Bellern Research Corporation*, 199 Kan. 638, 433 P. 2d 380; and *In re Bowlus*, 197 Kan. 351, 416 P. 2d 711.)

The point asserted by the appellants lacks merit for another reason. The Bankruptcy Act confers jurisdiction upon the court to:

". . . [D]etermine and liquidate all inchoate or vested interests of the bankrupt's spouse in the property in any estate whenever, under the applicable laws of the State, creditors are empowered to compel such spouse to accept a money satisfaction for such interest; . . ." (Bankruptcy Act, 11 U. S. C., § 11 [*a*] [7].)

Under the laws of Kansas creditors are empowered to compel a spouse to accept money satisfaction of a vested interest. If a creditor of Galen Boese obtained a judgment against him, and levied execution upon his one-half interest, assuming Mary Boese owned the other undivided one-half interest, the creditor could cause the interest of Galen Boese to be sold at a judicial sale, purchase the interest of Galen and thereafter bring a partition action against Mary Boese, thereby compelling her to either purchase the entire tract by election, or upon sale to accept money satisfaction for her interest out of the proceeds in the partition action. (See, *In re Blodgett*, 115 F. Supp. 33 [E. D. Wisc. 1953].)

The trustee in bankruptcy not only steps in the shoes of the bankrupt, but is given the status of a lien creditor, for the purpose of asserting priority rights to property, even though he does not represent the lien creditors. He has the status of an "ideal" lien creditor. Thus, as a tenant in common, or as an "ideal" lien creditor, the trustee could bring a partition action, and in the event of a sale at partition, could compel Mary Boese, as the spouse of the bankrupt, to accept money satisfaction of her interest.

On this point we think the statute is broad enough to grant the bankruptcy court jurisdiction.

Furthermore, the order dated April 9, 1972, determining that Mary Ann Boese had no interest in the real estate here in question was entered after Mary Ann Boese was duly notified, and she did not appear or file any pleading. Having failed to challenge the summary jurisdiction of the bankruptcy court, *she consented thereto*. A discussion of the principle of jurisdiction by consent in the bankruptcy court is found in 2 Collier on Bankruptcy, § 2.008 (2) (14th ed.) as follows:

"It is now well established that the bankruptcy court has jurisdiction to adjudicate summarily any controversy if it can be shown that the adverse party, who otherwise would be entitled to a plenary suit, consented to the exercise of the summary jurisdiction. [Bankruptcy Act, 11 U. S. C. § 46 (b).] The acquisition of summary jurisdiction by consent is an ever-expanding concept which receives increasing approval by the courts on the theory that the determination of all controversies in one forum, that is, in one court, is a far more desirable alternative than extending the resolution of the debtor's obligations and the creditor's rights over two or more forums or tribunals.

"If the adverse party expressly consents to the exercise of summary jurisdiction over the controversy, the bankruptcy court has, no doubt, jurisdiction to determine such controversy. This presents no difficulty. Once the consent is given, it cannot be withdrawn and the bankruptcy court is empowered to hear and determine all issues involved in the controversy. The consent necessary to confer in summary jurisdiction may be implied, since Clause (7) of Section 2a of the Act provides that an adverse party who does not timely interpose an objection to the summary jurisdiction of the bankruptcy court, either by a motion or by an answer or other pleading, is deemed to have consented to the exercise of such jurisdiction. Thus, the burden is on the adverse party to timely challenge the summary jurisdiction of the bankruptcy court. Such objection must be raised on or before the date fixed in the order to show cause for pleading, and must plead or set forth facts sufficient to show that the party's claim is genuinely adverse and not merely a sham or colorable. Legal conclusions alone will not suffice." (See also, 9 Am. Jur. 2d, Bankruptcy, §§ 28, 53.)

Mary Boese's right to have the controversy concerning her interest in the subject properties adjudicated in a plenary action was merely procedural *(In Re Panama-Williams Corporation,* 235 F. Supp. 729 [S. D. Tex. 1964]) and she impliedly consented to the bankruptcy court's summary jurisdiction under the Bankruptcy Act, 11 U. S. C., 11 (a) (7), by failing to timely interpose any objection thereto.

The appellants' contention that the trial court erred in concluding that the appellees' title to the land should be quieted against the appellants free and clear of any and all claims, demands, rights,

title and interest of the appellants is a corollary to the preceding jurisdictional contention that the bankruptcy court had no jurisdiction over the interest of Mary Ann Boese. The point is resolved by our discussion of the previous point.

The last point asserted by the appellants is that the trial court erred at holding the appellees are entitled to the Ness County wheat, and the proceeds therefrom, as well as any and all rights and benefits pertaining thereto, including any sums being held by the Agricultural Stabilization Conservation Service, or its agencies.

The appellants contend the title to the wheat, and the proceeds from its sale, represents an issue unaffected by the bankruptcy proceedings. It is argued the appellees could only acquire what the trustee conveyed to them, and that the trustee's conveyance did not encompass title to the wheat. (Citing, *Marley v. United States*, 381 F. 2d 738 [Ct. Cl. 1967].)

The appellants' argument proceeds upon the assumption that the Bankruptcy Act, 11 U. S. C. § 110 (*a*), fixes the time of the filing the petition initiating a proceeding under its provisions as the date when the trustee becomes vested with title to any and all of the bankrupt's property. Therefore, the critical time as of which the trustee's rights and powers, and the rights of others connected with the proceeding, are to be determined is the date upon which the petition was filed (4a Collier on Bankruptcy, § 70.05 [4] [14th ed.]).

Upon the foregoing it is argued the petition in bankruptcy for Galen H. Boese was filed on June 26, 1970; and that the wheat in question was planted nearly three months after the filing of the bankruptcy petition. Therefore, the growing crops were after acquired property over which the trustee had no power, and which could not be conveyed to the appellees on December 8, 1970. (Citing, *Bank of Nez Perce v. Pindel*, 193 F. 917 [9th Cir. 1912].)

It must be conceded the rights of the trustee as to the land in question are to be determined as of the date of the petition for bankruptcy for Galen H. Boese was filed, June 26, 1970. On that date Galen H. Boese was a conditional vendee of the real estate here in question, and at that time the trustee stepped into his shoes. There is nothing in the record to show any relinquishment of rights, title or possession by the trustee to the appellants. Throughout this litigation, the appellants maintained their position was that of tenants upon the real estate here in question by virtue of a lease from Loren Schartz, their purported assignee of the real estate contracts. However, that assignment was set aside and held for

naught. This resulted in placing the parties back into the situation which existed at the time of the filing of the bankruptcy petition—the appellants were conditional vendees with the trustee in bankruptcy taking their place. There is nothing in the record to indicate the trustee relinquished his rights under the contracts until all interest in the contracts was sold to the appellees.

When the petition in bankruptcy was filed on June 26, 1970, the wheat on the premises either had been or was being harvested by Galen H. Boese as he was permitted to do under the contracts, and there is no controversy between the parties concerning the wheat harvested *in the month of June 1970.* Thereafter either Galen H. Boese or Loren Schartz, and the record is silent on this point, must have prepared the land for seeding to wheat the following season. The wheat in question was seeded in the month of September 1970, and eventually harvested in June 1971, by Galen H. Boese. If the appellants can show any interest in the wheat harvested in June 1971, they must do so by showing their right either to the land upon which the wheat was seeded or their rights to be upon the land to seed the wheat and harvest the same.

The bankrupt's adjudication, in and of itself, operates to divest the bankrupt of all title and to place it in the trustee as effectually as if an absolute conveyance had been made. Upon the appointment and qualifications of the trustee, the bankrupt becomes an entire stranger so far as ownership of the assets of the bankrupt's estate is concerned. (9 Am. Jur. 2d, Bankruptcy, §§ 854, 855.) The trustee, thus having taken all interest of the appellants in the real estate as of June 26, 1970, had several options open to him, among which was the sale ultimately made to the appellees. There is no showing the appellants acquired any interest back from the trustee.

It must be noted the appellants took the position in the trial court that their right, title and interest in and to two-thirds of the wheat existed by virtue of their status as tenants on said real estate. As heretofore shown their status as tenants on the premises has been foreclosed. The appellants argue that if it is decided neither of the appellants had any interest in the land, then their possession of the land would be adverse and the appellees could not claim the wheat because a landowner is prohibited from claiming a crop sown and harvested by an adverse possessor. (*Wolf v. Weissbeck,* 157 Kan. 308, 139 P. 2d 398; *Holmes v. Holt,* 93 Kan. 7, 142 Pac. 369; and *Rathbone v. Boyd,* 30 Kan. 485, 2 Pac. 664.) Accordingly, the

appellants argue they are entitled to all of the proceeds from the sale of the wheat.

The appellants' assertion that they are entitled to all of the proceeds from the sale of the wheat as holders of the land *by adverse possession*, (asserted on appeal to this court for the first time) is *incompatible* with their position taken in the trial court that they were *tenants* on the property. The case of *Holmes v. Holt*, supra, supports the general proposition that an adverse possessor is entitled to the crops as against the owner, but such ruling was based upon a good faith entry upon the real estate. Here there is nothing in the record to show the appellants were any more than intruders or trespassers, and the rights of the trustee were still paramount.

Where a mere intruder on land plants crops thereon, such crops, as long as they remain unsevered, are the property of the owner of the land. (*Wolf v. Weissbeck*, supra.) Under these circumstances, the conveyance of the land by the trustee to the appellees in May 1971, while the wheat here in question was unsevered from the land, growing thereon and gaining sustenance therefrom, by quitclaim deeds carried with it the wheat growing thereon and harvested in June 1971. (*Jones v. Anderson*, 171 Kan. 430, 436, 233 P. 2d 483.)

The judgment of the lower court is affirmed.

FONTRON, J., dissenting.